# Wytheville.

## CHEATHAM v. TAYLOR, ETC.

### June 16, 1927.

1. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Privity—Case at Bar.*—The instant case was a petition for appeal from a decree ordering appellant to comply with a building restriction that no house should be built on appellant's property the front line of which should be nearer than twenty feet to the line of the street. Both appellant and complainants purchased their lots abutting on the street from a land company and the deeds from the land company contained the restriction. Appellant contended that there was no privity of contract or obligation between complainants and appellant, that the covenant in the deeds was a mere personal covenant between the grantor and the grantees.

   *Held:* That it was not necessary, in order to sustain the equitable remedy, that there should be any privity of either estate or contract, if it clearly appears that the restriction was created for the benefit of the complainants among others, or their grantor, and that the defendant had notice, actual or constructive, of the restriction.

2. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Third Persons not Parties to the Instrument—Question of Intention.*—Whether or not third persons, not parties to the instrument, are within its purview, is one of intention, and this intention may appear either from the instrument alone, or from the instrument with the aid of the surrounding facts and circumstances. The question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased.

3. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Privity—Suit By Party Intended to be Benefited—Doctrine of Tulk v. Moxhay.*—When, on a transfer of land, there is a covenant or even an informal contract or understanding that certain restrictions in the use of the land conveyed shall be observed, the restrictions will be enforced by equity, at the suit of the party or parties intended to be benefited thereby, against any subsequent owner of the land except a purchaser for value without notice of the agreement. Although the principal purposes of such agreements are to regulate the style and

costs of buildings, to restrict their location to certain distances from the street and to residential purposes, the principle of the doctrine of *Tulk* v. *Moxhay* is applicable to other kinds of restrictions on the use of land, and equitable easements are created for many miscellaneous purposes.

4. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Petition for Whose Benefit Made—Intervention of Court of Equity—Prevention of Third Persons Violating the Equitable Rights of Others—Notice.*—It was found from experience that the common law doctrines of easements and servitudes, and of covenants running with the land, were too narrow in their application, and left many substantial rights unprotected, and so courts of equity have intervened for the protection of such rights, making the intention of the parties the criterion of the existence of the right, and, when found to exist, enforcing it whether created by covenant or by simple contract. The equity is the prevention of a third person from violating the equitable rights of another of which he has notice, actual or constructive. In the establishment of the right, the intention of the parties is of great importance, but when once established no notice is necessary except of the existence of the right, and this notice may be actual or constructive.

5. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Enforcement in Equity—Privity—Injunction—Persons Who May Enforce Restrictive Agreements—Intention.*—Equity will enforce restrictive covenants against takers with notice of the servient tenement; privity is not necessary to entitle the injured party to sue; the proper method to protect and enforce the covenant is by injunction; the right to enjoin is not dependent upon the existence of a right of action at law; the right of a third person to the protection of the covenant is an equitable right by whatever name called; and the determination of the person who is entitled to sue is dependent on the intention of the parties to the covenant as disclosed by the language of the covenant, and the facts and circumstances surrounding its execution.

6. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Reasonableness—Injunction—When Granted—Conscience of the Court—Changed Conditions.*—An injunction to enforce a building restriction or restrictive agreement is addressed to the conscience of the court and will not be granted where it would be unfair and inequitable to do so, as where a residential section has become a business section and the enforcement of the covenant would be of little benefit to the covenantee, but cause serious pecuniary loss to the covenantor or his assigns, nor where it is contrary to public policy, as an undue restraint of trade. The contract to be enforceable must be reasonable.

7. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Enforcement in Equity—Persons Not Parties to the Instrument.*—Courts of equity will enforce restrictive covenants in conveyances of real estate where the intention of the parties is clear in creating them, and the restrictions are reasonable. And the covenant will be enforced at the instance of "persons who are not parties to the instrument containing the restrictions."

8. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Burden of Proof—Uniform Scheme of Development.*—While the burden of proof is on the person claiming the benefit of the restriction, it is said that if a uniform scheme of development or improvement is proved to have been the intention of the parties, equity will carry it out at the suit of any of the lot holders; provided, of course, he has not by his own conduct shut the doors of the court.

9. COVENANTS—*Covenant Running with the Land—Third Persons—Building Restrictions—Case at Bar.*—Covenants running with the land create personal rights and obligations in third persons not parties to the covenants, and are usually made for that purpose. In the instant case, whether the covenant be strictly a covenant running with the land or not, in a purely technical sense, it was an agreement that the lot purchased should at all times stand bound by the restrictive provision. It was part of the contract of grantee, the appellant, and even upon the theory that his contract of purchase was the sole measure of his obligation to respect the rights of other purchasers of lots, his lot was bound, into whosesoever hands it might pass, by the restrictive covenant that a house on the lot should not be nearer the street than twenty feet.

10. APPEAL AND ERROR—*Assignments of Error—Errors not Assigned will Not be Considered—Case at Bar.*—The instant case was an appeal from a decree ordering appellant to comply with the terms of a building restriction. The lots of appellees were conveyed by common grantor previously to the lot of appellant. The question has been raised in some jurisdictions as to the right of the first purchaser to enforce the restrictive covenant contained in the deed of the second purchaser. But no such assignment of error was made in the petition in the instant case, and, under repeated decisions of the Supreme Court of Appeals, errors not assigned in the petition will not be considered.

11. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Notice of Restrictive Agreement—Case at Bar.*—The instant case was a suit for injunction by complainants against defendant to enforce a building line restriction. Defendant contended that the suit could not be maintained because he had no notice of the rights claimed by the complainants in their bill. Complainants' lots and defendant's lot had been purchased from a land company. A resolution of a

board of directors of the company establishing the building line and advertisements for the company setting out this building line were not recorded and the recorded map did not show any building line restriction.

*Held:* That while it would have been better if the recorded map had shown the building line or if the deeds to the earlier grantees had contained a covenant by the grantor that like restrictions would be placed on subsequent grantees, these provisions were not essential prerequisites that the same result was otherwise accomplished. When the common grantor made the earlier conveyances, there was an implied promise on its part, especially in view of the resolution of its board of directors and advertisement, that the entire property covered by the resolution should be subject to the restriction, and for a violation of this promise it could have been enjoined by a purchaser of one of the lots. An equity attached to the lots sold which the common grantor could neither violate nor alienate to a purchaser with notice.

12. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Notice of Restrictive Agreement—Case at Bar.*—In the instant case, an injunction to enforce a building line restriction, appellant had constructive notice that a building plan was laid out by the recorded map.

*Held:* That the right to build nearer the street than the building line was never conveyed to him.

13. COVENANTS—*Covenant for the Benefit of Third Persons—Enforcemet by Third Persons.*—Where a covenant is for the benefit of third persons they have the right to enforce it in their own names, under section 5143 of the Code of 1919, independent of the equitable doctrine of *Tulk* v. *Moxhay*, but in the instant case a suit to enjoin one from the breach of a building line restriction, the court relied on both the statute, Code of 1919, section 5143, and the equitable doctrine of *Tulk* v. *Moxhay*.

14. BUILDING RESTRICTIONS AND RESTRICTIVE AGREEMENTS—*Insolvency of Land Company and Conveyance to Trustee.*—A land company after selling a large number of lots with building restrictions became insolvent and conveyed the remaining lots to a trustee to secure its creditors without the restrictive agreements contained in the deeds to the lots previously conveyed.

*Held:* That this did not show any purpose on the part of the company to change their policy in regard to the restrictions and did not, if it could, affect the rights of prior purchasers.

Upon a petition for an appeal.

*Appeal refused.*

The opinion states the case.

*S. G. Hamner* and *Volney E. Howard*, for the appellant.

*Wilson, Kemp & Hobbs*, for the appellee.

BURKS, J., delivered the opinion of the court.

*Upon a petition for appeal.*

This is an application for an appeal from a decree of the Circuit Court of the city of Lynchburg. We do not generally deliver opinions on such applications, but it is sometimes done in exceptional cases. *McCue* v. *Commonwealth*, 103 Va. 870, 49 S. E. 623; *Allen* v. *Commonwealth*, 114 Va. 826, 77 S. E. 66; *Jones* v. *Kirby*, 146 Va. 109, 135 S. E. 676. We have been urged to do it in the instant case because of the supposed novelty of the main question involved.

In 1890 the Rivermont Company became the owner of a boundary of two thousand acres of land in the county of Campbell, abutting on the corporate limits of the city of Lynchburg. In order to connect with the business part of the city, the Rivermont Company built an expensive viaduct across a deep ravine capable of carrying a double track street railway in the center and driveways and sidewalks on each side thereof. The Rivermont Company surveyed its property and laid it off in city blocks, lots, streets and alleys. It constructed an avenue called Rivermont avenue, eighty feet wide, extending from the northern end of said viaduct through its property, a distance of three miles. All of this property is now within the city limits. It was expected to, and has since become, the

principal residential part of the city. In order to make the lots on Rivermont avenue attractive for such purpose, the board of directors of the company, in April, 1891, passed a resolution declaring "that the building line of so much of Rivermont avenue as is beyond and northwest of Bedford avenue shall be twenty feet from the line of said avenue and no house or any part thereof shall be erected nearer to said street than said line, and all contracts of sale of lots on that part of said avenue and conveyances thereunder shall contain a covenant providing for such structure."

On July 4, 1891, and probably at other times, an advertisement was published in a daily paper in the city of Lynchburg, setting forth the advantages of the property of the Rivermont Company, in which, amongst other things, it was said: "The building restrictions, too, on this street, cannot fail to add to its other attractions. This consists in the fact that no house can be erected at a cost less than $1,500.00. * * * From Bedford avenue west, and northwest, there is another restriction of a wholesome character which requires buildings to be set back twenty feet from the street line."

A plat of the property, showing the blocks, lots, streets and alleys, was recorded in the clerk's office of the county of Campbell, in which the property was then located, but this plat does not show the building line on Rivermont avenue hereinbefore referred to.

The appellant acquired title to two lots on the south side of Rivermont avenue, within the restricted area, and the appellees acquired title to three lots on the opposite side of Rivermont avenue, also within the restricted area. The Rivermont Company was the common source of title of all of the parties, and each

of the deeds from the Rivermont Company contains the following clause:

"That the Rivermont Company in selling this lot sells with the distinct understanding and reservation that no house shall be built thereon now or at any other time the front line of which shall be nearer than twenty feet of the line of the street upon which said lot abuts, and further that no house shall be built thereon other than the stable, kitchen and other office on said premises which shall cost less than $1,500.00 * * and the grantee accepts the foregoing reservations and restrictions as covenants running with the land."

The deed from the Rivermont Company to John A. Cassidy, the predecessor in title of the appellant, bears date November 29, 1892. The deed from Cassidy to appellant bears date March 30, 1908. The latter deed also contained the same restrictive covenants. In 1911, the appellant built a dwelling on one of the lots and a drug store on the other, both twenty feet from Rivermont avenue. In 1925, he added fifteen feet to the front of the drug store, thus bringing it to within five feet of the avenue.

In 1893 the Rivermont Company, after having sold not less than seventy per cent of its lots on Rivermont avenue, became insolvent, and, by deed bearing date June 2, 1893, conveyed all of its property, including the remaining lots on Rivermont avenue, to Wm. V. Wilson, Jr., in trust to secure its creditors. This deed did not contain the restrictive provisions above mentioned, and Wilson sold and conveyed the lots without such restrictions.

The petition mentions but one lot on Rivermont avenue which was conveyed by the Rivermont Company without the restrictive provision.

When the appellees found that the appellant was about to make the addition to the drug store, they promptly notified him of their intention to apply for an injunction if he persisted in his purpose. He did persist, and this suit was brought to injoin him from proceeding, and to require him to tear down and remove what he had constructed within twenty feet of Rivermont avenue. At the hearing on the merits, the trial court granted the injunction prayed for, and required appellant to tear down and remove what he had constructed within said twenty feet.

This is an application for an appeal from that decree, and the chief point insisted upon by counsel for the petitioner is that the covenant aforesaid is a personal covenant, which could, at any time, be waived or released by the Rivermont Company, and that the appellees cannot maintain this suit. His contention on this point is thus stated in the petition: "There is no privity of contract or obligation between the plaintiff and your petitioner. There is in existence no covenant or agreement whatever between the plaintiffs and the defendant. There is no mutual covenant between the plaintiffs and the grantors of this petition by virtue of which they may make any lawful demand on him, or interfere with his use of his own property." This position is elaborated in the petition by argument to show that in each of the deeds made by the Rivermont Company the covenant was a mere personal covenant between the grantor and grantee in that deed.

The petitioner insists that "privity of contract" is essential to the maintenance of the appellees' suit, when the weight of authority appears to be that no such privity is necessary. It is not a question of privity, but of intention. If when the covenant was entered into, it was the intention of the parties that the grantees

were to be benefited by the building restriction, they may maintain a suit in equity to protect and enforce the right conferred by the covenant.

[1, 2] It is not necessary, in order to sustain the equitable remedy, that there should be any privity of either estate or contract, if it clearly appears that the restriction was created for the plaintiffs, among others, or their grantor, and that the defendant had notice, actual or constructive, of the restriction. There is an equitable right in the plaintiffs, variously designated, which a court of equity will protect and enforce, although there may be no remedy, or an inadequate one, at law. *Equitable Life Assurance Soc.* v. *Brennan,* 148 N. Y. 661, 43 N. E. 173; *Hays* v. *St. Paul M. E. Church,* 196 Ill. 633, 63 N. E. 1040; Note, 21 A. L. R. 1282-1288, and cases cited. Whether or not third persons, not parties to the instrument, are within its purview, is one of intention, and this intention may appear either from the instrument alone, or from the instrument with the aid of the surrounding facts and circumstances. In addition to authorities cited, see *Hano* v. *Bigelow,* 155 Mass. 341, 29 N. E. 628; *Elliston* v. *Reacher,* 2 Ch. 374, 77 L. J. (N. S.) 617, 99 L. T. (N. S.) 346, 2 Ch. 636. If a person is within the benefits intended to be conferred, he has an equitable interest which a court of equity will protect.

Dean Harlan F. Stone, of Columbia Law School (now a justice of the United States Supreme Court), has a very thoughtful and able article on "The Equitable Rights and Liabilities of Strangers to a Contract," in 18 Columbia Law Review, No. 4, pages 291-324, continued in 19 Do., No. 3, pages 177-191, which will be hereinafter referred to. He discusses *Tulk* v. *Moxhay,* 2 Phillips 774, now to be referred to, and subsequent cases interpreting that case.

In *Tulk* v. *Moxhay, supra,* the owner of a piece of ground sold and conveyed a part of it, described as "Leicester Square Garden," to a purchaser in 1808, who, amongst other things, covenanted that no building should ever be erected upon it. "The piece of land so conveyed passed by diverse mesne conveyances into the hands of the defendant, whose purchase deed contained no similar covenants with his vendor; but he admitted that he had purchased with notice of the covenant in the deed of 1808." The purchaser asserted the right to build on it, if he thought fit, and the "plaintiff, who still remained the owner of several houses in the square, filed his bill for an injunction; and an injunction was granted by the Master of the Rolls." A motion to dissolve was made before Lord Chancellor Cottenham, which was refused. The Lord Chancellor said: "That this court has jurisdiction to enforce a contract between the owner of land and his neighbor purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed. Here there is no question about the contract; the owner of certain houses in the square sells the land adjoining, with a covenant from the purchaser not to use it for any other purpose than as Square Garden. And it is now contended, not that the vendee could violate the contract, but that he might sell the piece of land, and that the purchaser from him may violate it without this court having the power to interfere. If that were so, it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains worthless. It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be

permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. Of course the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken.

"That the question does not depend upon whether the covenant runs with the land is evident from this, that if there was a mere agreement, and no covenant, this court would enforce it against a party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in any different situation from the party from whom he purchased."

Here, then, Lord Cottenham puts the right of recovery upon "an equity attached to the land," and gives the right of recovery against any one "purchasing with notice of that equity."

Of this decision Dean Stone says, it "has been very generally followed in the United States as well as in England, but there is no substantial agreement as to the theory upon which the burden of a restrictive covenant is imposed upon subsequent takers of the covenantor's land." He then takes up and discusses a number of different theories, or reasons assigned by judges and text writers for the conclusion reached by Lord Cottenham, and after stating his reason for dissenting from them, says: "While, as already indicated, a variety of reasons have been assigned in explanation of this result, the principle of the decision which seems to conform most completely to those other classes of cases in which equity protects a mere claim *in per-*

*sonam* against encroachment by third persons, and which seems most in harmony with moral standards, is that of the equitable duty of non-interference with the covenantee's equitable right upon his covenant. This view seems to have found acceptance in a qualified way by several of the English judges, who have referred the doctrine of the burden of the covenant's running in equity to the doctrine of 'notice,' and has been accepted without qualification by a number of American judges." For the last mentioned statement he quotes from *Whitney* v. *Union Ry.*, 11 Gray (77 Mass.) 359, 364, 71 Am. Dec. 715; *Bailey* v. *Agawan Natl. Bank*, 190 Mass. 20, 23, 76 N. E. 449, 3 L. R. A. (N. S.) 98, 112 Am. St. R. 296; *Brewer* v. *Marshall*, 19 N. J. Eq. 537, 543, 97 Am. Dec. 679, and refers to *Phoenix Ins. Co.* v. *Continental Ins. Co.*, 87 N. Y. 400, 408; *Hodge* v. *Sloan*, 107 N. Y. 244, 17 N. E. 335, 1 Am. St. Rep. 816.

In 8 Am. & Eng. Ency. L. (2d ed.), page 140, it is said: "Courts of equity, however, irrespective of whether a privity of estate exists, or whether the covenants run with the land, upon equitable grounds enforce such covenants against purchasers with notice."

[3] In Northrup on the "Law of Real Property," page 377, it is said: "A purely equitable doctrine, of great importance in growing cities and entirely distinct from the common law doctrine of covenants running with the land, has arisen in modern times. It is often referred to, from the English case that is its foundation, as the doctrine of *Tulk* v. *Moxhay*. It is also called the *doctrine of restrictive covenants in equity*, and the rights and obligations established by it are known as *equitable easements* and *equitable servitudes*. The doctrine is, in brief, that when, on a transfer of land, there is a covenant or even an informal contract

or understanding that certain restrictions in the use of the land conveyed shall be observed, the restrictions will be enforced by equity, at the suit of the party or parties intended to be benefited thereby, against any subsequent owner of the land except a purchaser for value without notice of the agreement. The principal purposes of such agreements are to regulate the style and costs of buildings to be erected on a tract that is being sold in parcels for building lots, to restrict their location to certain distances from the street, and to prevent buildings in a locality from being put up or used for any other than residential purposes. Restrictive covenants are most commonly made in connection with such sales of building lots, but the principle of the doctrine of *Tulk* v. *Moxhay* is, of course, applicable to other kinds of restrictions on the use of land, and equitable easements are created for many miscellaneous purposes."

In *Brewer* v. *Marshall*, 19 N. J. Eq. 527, 97 Am. Dec. 679, Beasley, C. J., after referring to *Tulk* v. *Moxhay, supra; Brouwer* v. *Jones*, 23 Barb. (N. Y.) 153; *Coleman* v. *Coleman*, 19 Pa. (7 Harris) 100, 57 Am. Dec. 641, said: "It will be found, upon examination, that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another from defeating such rights, and not upon the idea that the engagements enforced create easements, or are of a nature to run with the land." See also *Whitney* v. *Union Ry.*, 11 Gray (77 Mass.) 359, 364, 71 Am. Dec. 715; *Bailey* v. *Agawan Natl. Bank*, 190 Mass. 20, 76 N. E. 449, 3 L. R. A. (N. S.) 98, 112 Am. St. Rep. 296.

[4] It was found from experience that the common law doctrine of easements and servitudes, and of covenants running with the land, were too narrow in their application, and left many substantial rights un-

protected, and so courts of equity have intervened for the protection of such rights, making the intention of the parties the criterion of the existence of the right, and, when found to exist, enforcing it whether created by covenant or by simple contract. The equity enforced is the prevention of a third person from violating the equitable rights of another of which he has notice, actual or constructive.

In the establishment of the right, the intention of the parties is of great importance, but when once established no notice is necessary except of the existence of the right, and this notice may be actual or constructive.

[5] From the authorities cited, and others along that line, it appears that equity will enforce restrictive covenants against takers with notice of the servient tenement; that privity is not necessary to entitle the injured party to sue; that the proper method to protect and enforce the covenant is by injunction; that the right to enjoin is not dependent upon the existence of a right of action at law; that the right of a third person to the protection of the covenant is an equitable right by whatever name called; and that the determination of the person who is entitled to sue is dependent on the intention of the parties to the covenant as disclosed by the language of the covenant, and the facts and circumstances surrounding its execution.

[6] An injunction in this class of cases is addressed to the conscience of the court and will not be granted where it would be unfair and inequitable to do so, as where a residential section has become a business section and the enforcement of the covenant would be of little benefit to the covenantee, but cause serious pecuniary loss to the covenantor or his assigns, nor where it is contrary to public policy, as an undue

restraint of trade. The contract to be enforceable must be reasonable.

The petitioner's view of the relation of the parties seems to be that it is purely contractual, that there must be a contract between the parties, or their privies, mutually assented to, by which certain rights are created and corresponding obligations are imposed.

The principal authorities relied on are one case from this State and two from California, which will now be considered.

[7, 8] In *Stephenson* v. *Spivey*, 132 Va. 115, 110 S. E. 367, 21 A. L. R. 1276,* the grantor had no fixed policy about the building restriction, but included or omitted it at its pleasure. It is said that it was found that "the company (grantor) had conveyed 819 lots without building restrictions, as against 802 conveyed with restrictions." The basis for the finding that the restrictive clause was a personal covenant with the grantor is thus stated in the opinion: "It does not appear that the land company by any corporate action ever fixed upon a definite and uniform building scheme, nor is anything of that sort indicated upon either of the two plats which it recorded, and there is nothing in any of the deeds of the separate lots to suggest that the building restriction was intended otherwise than for the benefit of the grantor," although there was much respectable testimony to show what the policy of the company was. There was no covenant running with the land, but it was freely conceded that "courts of equity will enforce restrictive covenants in conveyances of real estate where the intention of the parties is clear in creating them, and the restrictions are reasonable." It was also conceded that the covenant

*There is an extended and valuable note appended to this case, discussing some of the questions here involved.

would be enforced at the instance of "persons who are not parties to the instrument containing the restriction." While the burden of proof was on the person claiming the benefit of the restriction, it is said that if "the uniform scheme of development or improvement is proved to have been the intention of the parties, equity will carry it out at the suit of any of the lot holders; provided, of course, he has not by his own conduct shut the doors of the court."

In *Werner* v. *Graham*, 181 Cal. 174, 183 Pac. 945, the restrictive provision was enforceable by a condition subsequent in favor of the grantor, his heirs or assigns, and the court said: "If the provisions are in fact conditions and not covenants, the defendants are not entitled to enforce them against the plaintiff, for the reversion clause runs in favor of Marshall (the common grantor), his heirs and assigns, and does not include the defendants, since by 'assigns' must be meant in this State assignees of the reversion, or right of re-entry." The court, however, treated the provisions as covenants rather than conditions and denied the relief prayer. This holding is vigorously assailed as a *dictum*, and as contrary to the weight of authority, and the court was asked to reverse the holding, in the case next to be considered.

In *McBride* v. *Freeman*, 191 Cal. 152, 215 Pac. 678, the case is for the most part devoted to sustaining the holding in the Werner Case, and to a discussion of the sufficiency of the pleadings to present the case sought to be made by the evidence. Indeed, the court says that "The sole question presented upon the appeal is whether the complainant states facts sufficient to constitute a cause of action." The case stated is that, "One Allen, who was the owner of a large tract of land, subdivided the same into a large number of lots,

and then proceeded to sell and convey said lots by reference to said map to various persons, including the predecessors in interest of plaintiffs and defendants," and in accordance with a general scheme or plan for the improvement of said tract, the said owner inserted in each and every deed conveying said lots, or any of them, restrictions and conditions prohibiting the erection of certain classes of houses on the lots, designating the price of the building to be erected, and fixing a building line at forty-two and one-half feet from the street. The complaint alleges that the restrictions were imposed and the general plan or scheme adopted for the general benefit of all the lots in said tract, that there was a common grantor and that the defendants were proceeding to erect a building on their lot in violation of the restrictions in his deed.

The court held that the case was ruled by the Werner case, that the Werner case was a natural sequence and logical development of a line of prior decisions extending over a period of more than seventeen years, and had become a rule of property. It admits that its holding is contrary to the weight of authority. Referring to the assault on the Werner case, it is said: "Appellants suggest, in effect, that *Werner v. Graham* should be overruled, and assert that it is contrary to the great weight of authority from other States. The latter may be conceded, but presents in itself no sufficient reason for a departure at this time from the rules there enunciated. After a careful reconsideration of the questions there involved, we are satisfied with the validity of the conclusions there stated, and with the soundness of the reasoning by which they were reached. The rules there enunciated are rules of property and have stood unchallenged and unquestioned for more than three years." The basis upon which

relief was refused in these two cases is that "It takes two to make a contract. There must be a meeting of the minds of both parties thereto. The mere fact that the vendor, in the exaction of uniform building restrictions, had in his own mind a general plan or scheme of improvements falls short of establishing even his own intention that such restriction shall be for the benefit of anyone else than himself, and much less does it establish such a meeting of the minds between him and his grantee as is necessary to create a contract. Given such an intention in the mind of the grantor, there must have coexisted a like intention in the mind of his grantee before the first element of plaintiff's cause of action can come into existence."

This statement is based upon the assumption that there is nothing in the contract between the parties except that in each deed made by the common grantor to a purchaser there is a similar building restriction, for it is said in *McBryde* v. *Freeman, supra:* "In *Hunt* v. *Jones*, 149 Cal. 297, 86 Pac. 686 (1906), the court recognized the rule that, where a proper case is presented, equity will enforce a personal covenant or agreement relative to land as effectually as would a court of law had the covenant been one clearly running with the land, and the covenant in that case, having been made expressly for the benefit of plaintiff's land, was held enforceable in equity as against an assignee of the covenantor who took with notice thereof."

[9] In no one of the last three mentioned cases was there any "covenant running with the land," or anything like it, and in the last mentioned case there seems to be a plain intimation that if the deed had contained such a covenant the court would have granted the relief prayed for. Covenants running with the land create personal rights and obligations

in third persons not parties to the covenants, and are usually made for that purpose. In the instant case, whether the covenant be strictly a covenant running with the land or not, in a purely technical sense, it was an agreement that the lot purchased should at all times stand bound by the restrictive provision. It was part of the contract of the grantee, and even upon the theory of the petitioner that his contract of purchase was the sole measure of his obligation to, respect the rights of other purchasers of lots, his lot is bound, into whosesoever hands it may pass, by the restrictive covenant. It is difficult to see what other construction can be placed upon it. Looking to the intention of the parties as gathered from the deeds to the petitioner and his predecessor in title, and the surrounding facts and circumstances, we have no difficulty in concluding that the petitioner had no right to extend his building beyond the line prescribed by the restrictions.

[10] The lots of the appellees were conveyed to their predecessors in title in 1891, the lot of the petitioner was conveyed to his predecessor in title in 1892, and the question has been raised in other jurisdictions of the right of the first purchaser under such circumstances to enforce the covenant contained in the deed of the second purchaser, but no such assignment of error is made in the petition in the instant case, and, under repeated decisions of this court, errors not assigned in the petition will not be considered. *Bank* v. *Trigg,* 106 Va. 327, 56 S. E. 158; *Worley* v. *Mathieson A. Works,* 119 Va. 862, 89 S. E. 880, and cases cited.

The right to maintain such a suit is discussed by Dean Stone in 19 Columbia Law Review, No. 3, pages 185–188.

[11] It is earnestly insisted by counsel for petitioner

that the complainants could not maintain their suit because the petitioner and those under whom he claims had no notice of the rights now claimed by the complainants in their bill; that the resolution of the board of directors was not recorded, that the advertisement was not recorded, and that the recorded map did not show any building line restriction. It would have been better if the recorded map, with reference to which all of the lots were sold, had shown the building line, or if the deeds to the earlier grantees had contained a covenant by the grantor that like restrictions would be placed in all subsequent conveyances of lots within the restricted area, but these provisions were not essential prerequisites if the same result was otherwise accomplished. When the common grantor made the earlier conveyances there was an implied promise on its part, especially in view of the resolution of its board of directors and advertisement, that the entire property covered by the resolution should be subject to the restriction, and for a violation of this promise it could have been enjoined by a purchaser of one of the lots. An equity attached to the lots sold which the common grantor could neither violate nor alienate to a purchaser with notice. Such is the principle of *Tulk* v. *Moxhay, supra.*

[12, 13] The petitioner and those under whom he claims had constructive notice that a building plan was laid out by the recorded map for an annex to the city of property adjacent thereto, and that this property was laid off in blocks, lots, streets and alleys. He had constructive notice of every right, title or interest in the lot purchased by him which the common grantor had conveyed to any prior purchaser, including restrictions on its powers over the lot purchased by him. He had both actual and constructive notice of the equitable right of the complainants to have the building line

maintained, and he convenanted that this building line should be maintained on the lot purchased by him. The right to build nearer than twenty feet to the avenue was, in effect, never conveyed to him. The layout of the recorded map showed one comprehensive plan, and a restricted building line would be of little advantage to one lot unless it was extended to practically all, and when the common grantor made the restriction in each conveyance, in pursuance of the resolution of its board of directors and its advertisement, it must have been intended for the benefit of all its grantees, antecedent and subequent, as well as for itself. It had no right to violate its implied agreement with purchasers, whether antecedent or subsequent, that the entire property should be covered by the restriction, and the covenant must be taken to be with the common grantor for the benefit of all purchasers. The covenant being thus, in part at least, for the benefit of the complainants, they had the right to enforce it in their own names, even independent of the equitable right we have been discussing. Code, section 5143. We do not rely, however, solely on the statute, but also upon the equitable doctrine announced in *Tulk* v. *Moxhay, supra,* and the cases following it. See also *Hopkins* v. *Smith,* 162 Mass. 444, 38 N. E. 1122.

The petitioner violated the equitable rights of the complainants with full knowledge, actual and constructive, of the existence thereof.

In the instant case, no one can fairly doubt that it was the intention of the parties that the restrictive provisions in the deeds from the Rivermont Company were for the mutual benefit of the company and the several purchasers from it of lots on Rivermont avenue within the area designated. This intent on the part of the company was plainly manifested by the resolution

of its board of directors and the newspaper advertisement hereinbefore quoted, and on the part of the purchasers it is hardly less plain from the stipulation that the "grantee accepts the foregoing reservations and restrictions as covenants running with the land." What else could this stipulation mean to the purchaser? Moreover, the purchasers acted on the covenant from 1892 till the institution of this suit, and built their houses with reference to the restricted line, and it would be extremely inequitable and unfair to them to allow the petitioner at this late date to violate its provisions.

This disposes of the main question presented by the petition.

[14] The deed made to Wm. V. Wilson, Jr., trustee, after the company became insolvent, was a practical necessity in insolvency proceedings, and did not show any purpose on the part of the Rivermont Company to change its policy and did not, if it could, affect the rights of prior purchasers.

Other points made in the petition need not be considered. The decree of the trial court is plainly right, and the petition for an appeal is therefore refused.

*Appeal refused.*