# Richmond

SHIRLINGTON DRUG STORE, INC. v. SHIRLINGTON CORPORATION.

April 26, 1957.

Record No. 4653.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Lawrence W. Douglas* (*Collins Denny, Jr.*, on brief), for the appellant.

*Armistead L. Boothe* (*Boothe, Dudley, Koontz & Boothe; William Stanley; Covington & Burling*, on brief), for the appellee.

MILLER, J., delivered the opinion of the court.

Shirlington Drug Store, Inc., hereinafter called complainant, filed a bill against Shirlington Corporation and sought to enforce a restrictive covenant and enjoin defendant from using a tract of land of 9.4499 acres or any part thereof for commercial purposes. Defendant's demurrer to the bill was sustained, and the court decreed "that the interest of complainant in the land, if any, is a restriction in restraint of trade which is a violation of public policy." We granted complainant an appeal.

All deeds hereafter mentioned were promptly recorded after execution, and the dates of recordation and deed books in which spread will not be stated.

As summarized, the following factual allegations appear in complainant's bill:

During the year 1941, Robert A. Ryland and James C. Robertson, trustees, were the owners of a tract of land of approximately 150 acres in Arlington county, and on December 23, 1941, they conveyed 25 acres to Defense Homes Corporation, and by deed of the same date, grantors conveyed an additional 52.841 acres to the same grantee. Both deeds contained this provision:

"No structure other than structures meeting the specification of residential 'B' zoning, as provided and defined by the Ordinance and regulations of Arlington County, Virginia, as of the date hereof, shall be construed on the real estate hereby conveyed."

Ryland and Robertson, trustees, by deed of February 6, 1942, conveyed 36.7014 acres of the original tract to Fort Reynolds Develop-

ment Corporation, hereinafter called Fort Reynolds, and that deed contained this provision:

"None of the property conveyed by this Deed shall be used for commercial or industrial uses."

Ryland and Robertson, trustees, by deed of November 4, 1942, conveyed 34.4002 acres "being the remainder of the original one hundred and fifty (150) acre tract," to Seminole Corporation, and this deed contained no restriction.

Thereafter by deed of July 9, 1943, Seminole Corporation conveyed the tract of 34.4002 acres to Shirlington Corporation, without restriction. The unrestricted 34.4002 acres were developed by Shirlington Corporation into a business area, known as "Shirlington Business Center." By written lease of August 11, 1943, Shirlington Corporation leased a drug store in this business center to Elsberg and Gerber for a term of twenty years, and through assignment, with consent of Shirlington Corporation, it is now leased by complainant. That lease contains the following provision:

"42. While lessor will not agree not to lease another Drug Store in Shirlington Business Center, lessor does agree to give lessee the first chance at any other Drug Store to be built by lessor in said center. For the purpose of this lease, 'Shirlington Business Center' shall include all real estate which lessor *now owns or has any interest in* within one mile of the said leased premises; * * *" (Emphasis added.)

All of this acreage is adjacent to the cities of Alexandria and Washington, and the acreage sold Defense Homes Corporation is upon an eminence overlooking these two cities. It was adapted to residential development, and after sale by Ryland and Robertson, it soon became a part of an extensive apartment house area known as Fairlington. The greater part of the 36.7014 acres sold to Fort Reynolds is upon the same plateau, and much of it is devoted to residential use.

However, part of the 36.7014 acres, *i.e.,* a parcel of 9.4499 acres, which adjoins the 34.4002 acre tract is not elevated. Topographically, it is well adapted to commercial use and adjoins the "Shirlington Business Center."

Through grant by Fort Reynolds and successive conveyances thereafter, Shirlington Corporation acquired from Sudbury Estates, Inc., by deed of September 9, 1953, the 9.4499 acre tract, which is the lowland part of the land granted by Ryland and Robertson, trus-

tees, to Fort Reynolds with restriction against commercial use. This 9.4499 acres has now been given "a commercial zoning classification" by the public authority of Arlington county, and by location and topography, it is well suited for that classification.

The approximately 45 acres of lower level land, which consists of 34.4002 acres sold to Seminole Corporation without restrictions, and by it conveyed to Shirlington Corporation without restrictions, and the 9.4499 acres which is a part of the 36.7014 acres sold to Fort Reynolds with restriction, is bounded in part by a public highway, *i.e.*, Seminary road. Since 1942 that area has been developed, and the approximately 45-acre area is now bounded on its south by a much used thoroughfare, *i.e.*, Shirley Memorial Highway, and 29th street has been opened between the 9.4499 acres and the "Shirlington Business Center," and that street bounds the smaller tract on the northeast and the larger tract on the southwest.

It is also alleged in the bill that while the 150-acre tract was in the single ownership of Ryland and Robertson, trustees, and other beneficial owners, the owners, as a part of a common plan or design for its development, imposed upon the portions sold to Defense Homes Corporation and Fort Reynolds the restrictions mentioned, and then sold the remainder of the tract without restriction. It is then alleged that this uniform pattern or scheme was adopted at one time for the mutual benefit of the residential and commercial portions of the original tract of land and was known and recognized by the grantees, including defendant, and has subsequently been recognized and adopted in the development of the several portions of the original tract, and that there was created an equitable servitude or a dominant and servient tenement, and *Shirlington Corporation and its assigns became vested with a property interest in the restricted areas which entitled Shirlington Corporation or its assigns to enforce such restriction.*

By deed of February 17, 1955, and by other deeds executed prior thereto, Shirlington Corporation acquired releases of the restriction against commercial use from all present owners in the 36.7014-acre tract.

Thus defendant is the owner of the 34.4002 acres of lowland suited to commercial use situate on the northeastern side of 29th street, upon which no restrictions were ever imposed, and it is likewise the owner of the 9.4499 acres situate on the southwestern side of 29th street, upon which the use restriction was imposed when the tract of 36.7014

acres, of which it was a part, was conveyed to Fort Reynolds. However, defendants have secured release of the restriction upon this 9.4499 acres from the several owners of the original 36.7014 acres.

Defendant now proposes to construct and lease a building in the 9.4499-acre tract to a tenant to be used as a drug store. Complainant asserts that the operation of a drug store in that area will result in serious competition with his drug store, will cause him irreparable damage, is in violation of his rights under the covenant against use of that area for commercial purposes, and also violates the covenant in his lease.

[■] Aside from the fact that defendant is now the owner of what complainant alleges to be the dominant and servient tracts, the chief question presented is: Can this provision, which was incorporated in the deed from Ryland and Robertson conveying the 36.7014 acres to Fort Reynolds, be enforced by complainant, who is the lessee of a grantee from Seminole Corporation, purchaser of the 34.4002 acres, though neither the deed to Seminole nor the deed from Seminole to its grantee undertook to give Seminole, or its grantee, any interest or right of any character in any area other than the 34.4002 acres conveyed to it?

The scope and character of the restriction relied upon by complainant and the positions that the litigants occupy in relation to the restriction are, in the final analysis, determinative of whether or not the restriction may be enforced by complainant.

In the bill it is alleged that "an equitable servitude or a dominant and servient tenement" was created and Seminole Corporation, Shirlington Corporation, and its assigns "*became vested with a property interest* in the restricted areas" which entitles Shirlington Corporation or its assigns to enforce the restriction. (Emphasis added.)

In its brief complainant relies upon that claim and theory and states its position thus: "In other words, the owner of the commercial land has bought from the common grantor, and has paid for, *an interest* in the residential land, as well as the fee simple title in the commercial tract." After citing and quoting from *Hercules Powder Co.* v. *Continental Can Co.*, 196 Va. 935, 86 S. E. 2d 128, complainant reiterates and re-emphasizes its claim that Shirlington Corporation acquired an interest in the land in the restricted area in this language:

"The Restrictive Right acquired by Shirlington Company
was an Interest in Land.

"The major premise of plaintiff's case rests upon the proposition

that Shirlington Company, as owner of the 35 [34.4002] acre un-restricted commercial tract, became the owner of a dominant tene-ment or easement over the adjacent restricted residential land. This entitled it to enforce the restrictive covenant. That right constituted an interest in land."

Chiefly relied upon to sustain this position are *Tulk* v. *Moxhay*, 2 Phil. 774, 41 Eng. Rep. 1143 (Chan. 1848), and *Cheatham* v. *Taylor*, 148 Va. 26, 138 S. E. 545. These decisions are, however, distinguish-able from the case at bar because of the difference in the character of the respective restrictions and the difference in the relation of the parties litigant to the restrictions.

In *Tulk* v. *Moxhay*, the owner of land conveyed a part of it described as "Leicester Square Garden" to a purchaser in 1808, who covenanted that no building should ever be erected upon it. The land granted came by mesne conveyances to defendant whose deed contained no similar covenant, but he purchased with notice of the covenant in the deed of 1808. The defendant purchaser asserted a right to build upon the land, and complainant, who remained the owner of several houses in the square, filed a bill for injunction, which was granted. In refusing a motion to dissolve, the Lord Chancellor said:

"That this court has jurisdiction to enforce a contract between the owner of land and his neighbor purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a par-ticular way, is what I never knew disputed." The grantee's assigns who purchase with notice can also be restrained by the original grantor of the land in question.

The principle established is that if on conveyance of land there is a covenant that certain restrictions on the use of the land granted shall be observed, equity will enforce them at the instance of the person or persons intended to be benefited by the restrictions against a sub-sequent grantee of that land who took with notice of the agreement.

In *Cheatham* v. *Taylor, supra*, Rivermont Company, owner of two thousand acres of land adjoining the city of Lynchburg, undertook to develop the tract for sale, surveyed it and "laid it off in city blocks, lots, streets and alleys." Rivermont avenue, eighty feet wide and three miles in length, was laid out through the property. In order to make the lots fronting thereon attractive for residential pur-poses, the board of directors, in April 1891, adopted a resolution declaring that the building line on Rivermont avenue beyond and

northwest of Bedford avenue should be twenty feet from the line of the avenue and no house or any part should be erected nearer to the street, and all contracts for sale of lots on that part of the avenue should contain a covenant to that effect.

On July 4, 1891, an advertisement was published in the daily paper calling attention to the advantages offered in the subdivision in which it was said: "The building restrictions, too, on this street, cannot fail to add to its other attractions. This consists in the fact that no house can be erected at a cost of less than $1,500.00 * * * From Bedford avenue west, and northwest, there is another restriction of the wholesome character which requires buildings to be set back twenty feet from the street line."

A plat of the property showing the streets, alleys, blocks and lots was recorded in the local clerk's office, but it did not show the building line on Rivermont avenue. Cheatham acquired two lots on the south side of Rivermont avenue in the restricted area and Taylor acquired title to three lots on the opposite side of Rivermont avenue in the restricted area. The deed from Rivermont to appellee's predecessor in title, executed in 1891, and its deed to John A. Cassidy, appellant Cheatham's predecessor in title, dated November 29, 1892, contained the following restriction:

"That the Rivermont Company in selling this lot sells with the distinct understanding and reservation that no house shall be built thereon now or at any other time the front line of which shall be nearer than twenty feet of the line of the street upon which said lot abuts, and further that no house shall be built thereon other than the stable, kitchen and other office on said premises which shall cost less than $1,500.00 * * * and the grantee accepts the foregoing reservations and restrictions as covenants running with the land."

The deed from Cassidy to Cheatham of March 30, 1908, also contained the restrictive covenant. In 1911 Cheatham built a dwelling on one lot and a drug store on the other, both having a twenty foot set back, and in 1925, added fifteen feet to the front of the drug store, thus bringing it within five feet of the avenue. In 1893 Rivermont company, after having sold as much as seventy per cent of its lots on Rivermont avenue, and having placed the restriction in all but one deed, became insolvent and by deed of June 29, 1893, conveyed all of its property, including the remaining lots on Rivermont avenue to Wm. V. Wilson, Jr., as trustee to secure its creditors. This deed did

not contain the restrictive provision, and Wilson thereafter sold and conveyed lots without such restriction.

When appellees learned that appellant was about to make the addition to the front of his drug store, suit was brought to enjoin him from violating the restriction and require him to remove so much of the addition as had been erected. The relief prayed for was granted, and in an opinion approving that decree and refusing Cheatham an appeal, we said:

"It is not necessary, in order to sustain the equitable remedy, that there should be any privity of either estate or contract, if it clearly appears that the restriction was created for the plaintiffs, among others, or their grantor, and that the defendant had notice, actual or constructive, of the restriction. * * *" At page 34.

The decisions of *Oliver* v. *Hewitt*, 191 Va. 163, 60 S. E. 2d 1, and *Hercules Powder Co.* v. *Continental Can Co., supra*, also cited and relied upon by complainant are likewise distinguishable from the case at hand because of the difference in the respective restrictions and the relation of the parties litigant to the covenants.

An able article upon this subject by Dean Harlan F. Stone of Columbia Law School, later a Justice of the United States Supreme Court, is found in Volumes 18 and 19, Columbia Law Review, at pages 291 and 177 respectively. Other authorities that discuss and appraise the effect of restrictions of this character and indicate by whom they may be enforced are 14 Am. Jur., Covenants, §§ 27, 210, 211, 308, 311; 26 C. J. S., Deeds, § 167; 5 M. J., Covenants, §§ 8, 9, 10; 41 Virginia Law Review 675; and 17 Harvard Law Review 174.

[■■] The covenant relied upon by complainant is obviously for the benefit of the grantors, but it does not purport to be or indicate that it is for the benefit of any other tract of land or for subsequent grantees in any other tract to be thereafter sold. Nor need we determine whether or not it was intended for the benefit of subsequent and successive grantees within the restricted area so as to be enforceable *inter se* by grantees of lots or acreage in that tract. Yet even if it were for the benefit of successive grantees and whatever may have been the plan and intent of Ryland and Robertson, trustees, the language of the restriction cannot be construed and applied so as to vest a property interest in or servitude over the restricted area for a purchaser in the unrestricted tract as contended for. Bluntly stated, the language of the restriction will not support that strained and extended construction. The restriction does not impose a servitude

upon land in the restricted area for the benefit of land in the unrestricted tract, nor does it give to any purchaser in the unrestricted acreage any interest in land in the restricted area as contended for by complainant. That being true, it follows that when complainant acquired his lease to the drug store, Shirlington Corporation owned no interest in the land in the unrestricted tract and thus the provision of the lease likewise relied upon by complainant is ineffectual to sustain the relief prayed.

Having decided that the restriction is unavailing to complainant, we need not determine if it is in restraint of trade and against public policy.

For the reasons stated the decree appealed from is

*Affirmed.*