### Richmond

CHARLES L. BURNS, JR., ET AL.

V.

WINCHESTER MEMORIAL HOSPITAL

June 17, 1983.

Record No. 801904.

Present: All the Justices.

*D. P. Rabun (Philip E. Groves; Larrick, White, André & Rabun; Largent, Anderson, Larrick & Groves,* on briefs), for appellants.

*Ronald J. Brown (William A. Johnston; Harrison & Johnston,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

In this declaratory judgment proceeding, Winchester Memorial Hospital asked the trial court to enjoin the appellants, Charles L. Burns, Jr., and other lot owners in Baker Terrace Subdivision,[1] from enforcing certain restrictive covenants which appellants contend prohibit the Hospital from constructing a multi-story parking garage. Holding the restrictions were invalid, the trial court enjoined the appellants from enforcing them. The principal issue on appeal is whether the trial court erred in finding the appellants failed to prove a general scheme or plan of development which imposed residential restrictions on all lots in the subdivision and which gave all lot owners in the subdivision reciprocal rights of enforcement.

In 1917, Frederick Land Corporation acquired a 12 acre tract on which was located the Winchester Inn. The hospital was located south of the Inn. In 1919, the corporation razed the inn and subdivided approximately 7½ acres of the tract into 24 lots, naming the subdivision "Baker Terrace."

A plat of Baker Terrace dated August, 1918, was prepared by Brown & Clarkson, Engineers. The plat was not recorded until August, 1920. Prior to recordation, the corporation conveyed Lots 1 through 4 and 6 through 9 by six deeds. Each deed referred to a "blue print or plat . . . made by Brown & Clarkson, Engineers . . . dated August, 1918, which is to be recorded in the office of the Clerk of the Corporation Court of the City of Winchester . . . ." After the plat was recorded, the developer sold only two more lots, numbers 12 and 13, before suffering a financial failure.

All the deeds executed by the corporation, except that conveying Lot 9, provided "that no building except a dwelling house and structures usual and incidental to the use of the dwelling shall be built on said land . . . ." The deed conveying Lot 9 provided "that not more than one dwelling house shall be built thereon at any one time . . . ." All deeds stated that the restrictions were covenants running with the land.

The deed conveying Lots 6 and 7 and the deed for Lot 1 and one-half of Lot 2 stated that "[t]he breach of any of the covenants made in this paragraph shall operate a forfeiture in favor of the Frederick Land Company, Incorporated, or its successors, of the land herein conveyed." The other deeds executed by the corpora-

---

[1] The other appellants are Virginia E. Burns, Dorothy C. Kater, Charles Mort, Juanita Lupton, Elizabeth Hume Carr, Frances W. Jones, Philip E. Groves, Sigrid M. Groves and Bernadette Spillman.

tion contained no language indicating for whose benefit the restrictions were imposed or by whom they were enforceable. The corporation's last two deeds provided that "[t]he grantor agrees that these covenants shall be embodied in all deed [sic] hereafter made by the grantor conveying any portion of said property described . . . ." on the plat made by Brown & Clarkson.

Following the corporation's financial failure, the remaining lots were sold by special commissioners to F. L. Glaize and Shirley Carter.[2] The deed did not contain restrictive covenants, but did refer to the Brown & Clarkson plat.

Glaize and Carter rearranged some of the lots in Baker Terrace and sold them to various individuals. Three lots were conveyed subject to the restriction that only dwellings could be erected, and commercial structures were prohibited on five other lots. No residential restriction was contained in the deeds to the other eight lots sold by Glaize and Carter.

The hospital's property involved in this litigation consists of Lots 1 through 5 and Lot 8 as shown on the original plat. The hospital removed the dwellings from these lots and paved them for ground-level parking. They are the proposed site of a multi-story parking garage. Until the hospital converted its property to a parking lot, all lots in Baker Terrace Subdivision were actually used for residential purposes.[3]

▉ The appellants concede that no language in their deeds or those of the hospital gives them the explicit right to enforce restrictions contained in the hospital's deeds. However, the appellants contend an equitable servitude exists on the hospital's land for their benefit. They rely on the doctrine set forth in *Cheatham v. Taylor,* 148 Va. 26, 138 S.E. 545 (1927), which states:

> that when, on a transfer of land, there is a covenant . . . that certain restrictions in the use of the land conveyed shall be observed, the restrictions will be enforced by equity, at the suit of the party or parties intended to be benefited thereby, against any subsequent owner of the land except a purchaser for value without notice of the agreement.

---

[2] Lot 5 was apparently sold by the special commissioners to a third party. The chain of title to this lot is not clear, but apparently subsequent conveyances of it did not contain restrictive covenants.

[3] The south half of Lot 9, by virtue of a release executed by all owners in Baker Terrace, is now used as doctors' offices.

*Id.* at 37-38, 138 S.E. at 548. *See also, Mid-State Equipment Co.* v. *Bell,* 217 Va. 133, 225 S.E.2d 877 (1976); *Minner* v. *City of Lynchburg,* 204 Va. 180, 129 S.E.2d 673 (1963).

■ To claim the benefit of an equitable servitude, the appellants must prove there was a general scheme of development to restrict the subdivision to residential use. *Mid-State,* 217 Va. at 141, 225 S.E.2d at' 884. In making this determination, the intention of the common grantor is of great importance. *Id.*

■ The appellants rely on *Mid-State* and *Minner,* where we affirmed the trial court's ruling that a general scheme of development existed. However, the evidence in the present case is not as strong. In *Mid-State,* the plat of the land in question stated that "[a]ll lots in this Subdivision are restricted to residential use . . . ." 217 Va. at 137, 225 S.E.2d at 881. All deeds in the subdivision either contained the restriction or referred to the plat. *Id.* at 142, 225 S.E.2d at 885. We held this evidence showed the intent of the developer to establish a general plan. *Id.*

Similarly, in *Minner,* a tract of land was subdivided into 31 lots. Except for "negligible exceptions" in three deeds, 204 Va. at 183, 129 S.E.2d at 676, all the conveyances contained a residential restriction and further provided "that any of the covenants, agreements and restrictions contained herein shall at any time and in any manner be changed with the mutual consent in writing of all of the owners of all of the lots shown upon the plat . . . ." 204 Va. at 184, 129 S.E.2d at 676. We held this language showed an intention on the part of the developer to create a general scheme for the benefit of all lot owners. *Id.* at 188-90, 129 S.E.2d at 679-80.

Unlike *Mid-State* and *Minner,* the deeds in the present case, except for those to Lots 12 and 13, contain no language indicating an intent by the grantor to have the restrictions run to the benefit of all lot owners in the subdivision. Further, there are no restrictions present on the plat.

The trial court considered the above factors in determining there was no general scheme of development in the subdivision. It further considered the facts that the plat of the subdivision was not recorded until after the first eight lots had been conveyed; that nine of the 28 lots in Baker Terrace contained no restriction prohibiting all but residential use; and that the language of the restriction in the deeds to the other lots varied. Finally, the trial court noted that the deeds to Lots 12 and 13 contained a covenant

that a residential restriction would be contained in all subsequent deeds. The trial court held this language negated a conclusion that a common scheme of development had arisen before this time.

The trial court heard the evidence *ore tenus* and viewed the area involved. Therefore, its decree is entitled to the same weight as that which attaches to a jury verdict and is binding upon us unless it is plainly wrong or without evidence to support it. *Hastings v. Taylor,* 185 Va. 13, 14, 37 S.E.2d 767, 767 (1946); *Henrico v. City of Richmond,* 177 Va. 754, 782, 15 S.E.2d 309, 318 (1941). When the evidence is viewed in the light most favorable to the hospital, we cannot say it fails to support the trial court's finding.

Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*