# RONALD BAIN, ET AL.

## V.

# SUZAN M. BAIN, ET AL.

Record No. 841569

October 9, 1987

Present: All the Justices

*Max Jenkins (John W. L. Craig, II; Jenkins, Quigley & Craig,* on brief), for appellants.

*(Eugene L. Nuckols; Crowell, Nuckols, Layman, Aust and Phillips*, on brief), for appellees. Appellees submitting on brief.

THOMAS, J., delivered the opinion of the Court.

Ronald Bain, David Brown, and Doug Brown (the "Lot Owners") owned lots in a residential subdivision known as Aquarius Estates, located in Pulaski County. They purchased their lots from Suzan M. Bain and Donald J. Bain (the "Developers"). The Lot Owners sued in equity seeking to enjoin the Developers' efforts to create a mobile home park on land located directly behind the Lot Owners' property.

The matter was referred to a special commissioner who heard evidence *ore tenus*. The special commissioner concluded that injunctive relief should be denied because the Developers were not precluded by express or implied restrictions from creating the mobile home park. The trial court confirmed the commissioner's report.[1] The Lot Owners appeal.

The Lot Owners contend that the trial court erred in at least three ways. First, they argue that the subdivision plat filed by the Developers expressly excluded the placement of mobile homes on the entire 10.01 acre tract of land. Second, they argue that even if the entire tract was not subject to an express restriction, an implied negative reciprocal easement exists in their favor because of the general scheme of development of the land. Third, they argue that the Developers are estopped to deny that the restriction against mobile homes applies to the entire tract because they

---

[1] Two judges ruled in this case. The Lot Owners make repeated reference to the first opinion, which was favorable to them. But that opinion was withdrawn and we will not make further reference to it.

averred the same in certain deeds. We find no merit in any of the Lot Owners' arguments; therefore, we will affirm the trial court's decision.

In 1974, Donald J. Bain acquired a 10.01 acre tract of land.[2] Bain then moved upon the land in his mobile home. He lived in this mobile home both before and after the creation of the subdivision. He decided to subdivide a portion of the land that fronted on a state maintained road. He hired a surveyor who surveyed the land and then platted off six lots along the state road. The surveyor's certificate is dated December 28, 1974. The plat contains an "Owners Consent and Dedication," which reads in pertinent part as follows:

> Know all men by these presents, the subdivision of land as shown on this plat, containing *10.01* acres, more or less, designated as *Aquarius Estates*, situated in the Ingles Magisterial District of Pulaski County, Virginia is with free consent of, and in accordance with the desires of the undersigned owners thereof, that . . . all the lots in said subdivision are subject to certain restrictions, reservations, stipulations and covenants in writing executed by the undersigned under the date of *May 5, 1975* and recorded in the clerk's office of Pulaski County, in deed book *304* page *281*, the said *10.01* acres of land hereby subdivided having been conveyed to *Donald J. Bain* by *Thomas P. Bain* . . . .

(The italicized items consist of information filled in on blank spaces.) The plat itself did not set forth any restrictions. Although the surveyor dated the plat December 28, 1974, it was not approved by the County or the highway department until April 30, 1975.

By letter dated February 12, 1975, the Pulaski County Building Administrator made clear that he viewed the subdivision as consisting of the six platted lots. The administrator wrote as follows: "At the regular meeting of the Pulaski County Planning Commission February 11, 1975 the subdivision known as Aquarius Estates, which consist[s] of six lots, was approved by the Pulaski County Planning Commission."

---

[2] In March 1975, Donald J. Bain conveyed to himself and his wife Suzan his interest in the 10.01 acres shown on the plat.

In May 1975, the Developers executed a "Deed of Dedication and Certificate of Consent For Subdivision." In that deed they state in pertinent part as follows: "the undersigned owners of the following described lands, do hereby certify that the platting or dedication *of a portion* of that certain tract or parcel of real estate . . . entitled 'Aquarius Estates' . . . is made with the free consent and in accordance with the desire of the undersigned owners . . . ." (Emphasis added.)

The May 1975 deed of dedication then sets forth certain restrictions to be imposed on the subdivision, all of which were designated as "covenants running with the land." Most pertinent here is restriction number 9 which reads in relevant part as follows: "No trailer, mobile home or barn shall be placed upon any lot."

The plat indicates that the subdivision consists of the entire 10.01 acre tract. On the other hand, the deed of dedication indicates that the subdivision consists of only a portion of the entire tract, more specifically, the six lots that were shown on the plat. The commissioner concluded that the two documents were in conflict and heard evidence concerning the Developers' intent. The commissioner was persuaded that the Developers intended the restriction to apply only to the six lots designated on the plat and not to the entire 10.01 acre tract. As a result, the commissioner concluded that the Developers were free to build the mobile home park.

Certain well-established principles guide our disposition of this case. First, we are confronted with a commissioner's report based on live testimony and confirmed by the trial court. In such a situation, the chancellor's decision will be affirmed unless it is plainly wrong. *See Hill* v. *Hill*, 227 Va. 569, 576-577, 318 S.E.2d 292, 296 (1984). Next, restrictions on the use of property are not favored; they must be strictly construed against the party seeking to enforce the restriction; and substantial doubt or ambiguity must be resolved against the restriction and in favor of the free use of the property. *See Bauer* v. *Harn*, 223 Va. 31, 39, 286 S.E.2d 192, 196 (1982); *Bank* v. *Standard Cary*, 208 Va. 298, 304, 156 S.E.2d 778, 784 (1967).

The Lot Owners' argument that the restriction against mobile homes expressly applied to the land retained by the Developers must fail. As the commissioner noted, there was a conflict between the plat and the deed of dedication which created an ambiguity as to the scope of the restriction. When that ambiguity

is resolved against the restriction and in favor of the free use of the property, it is plain that the least restrictive document, that is, the deed, must control. Moreover, the commissioner concluded as a matter of fact that the Developers did not intend to restrict the entire 10.01 acres. This conclusion is buttressed by the fact that the Developers lived on the retained land in their own mobile home. As the Developers point out, they would not likely have intended to impose restrictions upon themselves that would oust them from their own property.

■ The Lot Owners support their express restriction argument by contending that the plat must control because it was referred to in the deed. In making this point, they rely on foreign authority in cases where the plat itself set forth the restrictions. Here, the opposite occurred: the plat contains no restrictions but the deed does. For this reason, we are not persuaded by the Lot Owners' argument that because the deed made reference to the plat, the plat controls. There was nothing in the plat to control the way in which this land would be utilized. We hold, therefore, that the trial court did not err in ruling that the Developers were free to use the retained land as a site for a mobile home park.

■ The Lot Owners' implied restriction argument fares no better than their express restriction argument. To establish an implied restriction, the Lot Owners were required to establish a general scheme of development from which a court could conclude that it was the Developers' intent to restrict the use of all of their land even though only a portion was expressly restricted. *See Burns* v. *Winchester Hosp.*, 225 Va. 545, 549, 303 S.E.2d 908, 910 (1983). We said in *Burns* that in deciding whether a general scheme of development exists, the intention of the common grantor is of great importance. The Lot Owners implied restriction argument must fail for two reasons. First, there was no proof of a general scheme of development of the type referred to in *Burns*. The Lot Owners simply showed that the deeds to the six lots shown on the December 28, 1974 plat contained restrictions against mobile homes, and that in two additional conveyances of lots fronting on the state road, similar restrictions were imposed. The Lot Owners make no mention of any action on the Developers' part concerning the retained land that would reflect the Developers' intention to make the entire 10.01 acres subject to the same restriction. The Developers explained that they intended to subdivide only the land on the state road while reserving to them-

selves all rights to the remaining land. The Lot Owners' evidence does not contradict the Developers' stated intention. Indeed, it is consistent with it.

Moreover, the commissioner had the Developers before him and learned of their intentions directly from them. He believed their testimony. It would be an odd result to infer a restriction based on a deduction of the common grantors' intent if to do so would be contrary to an express intent which was both believable and believed. We hold that the trial court did not err in rejecting the Lot Owners' implied restrictions argument.

■ With regard to their estoppel argument, the Lot Owners contend that because their deeds make reference to the plat and to the certificate of subdivision, the Developers are estopped to deny the restrictions contained in the deed of dedication. This argument is meritless. It suggests that merely because a particular restriction is contained in the deeds of the Lot Owners, that same restriction must apply to the retained land or otherwise the Developers will somehow be permitted to disavow their deeds. The second proposition does not follow from the first. The fact that the restriction against mobile homes is in the Lot Owners' deeds means that that restriction applies to the Lot Owners. Because that restriction reaches no further than the deeds in which it is found does not mean those deeds are being disavowed by the grantors. We hold that the trial court did not err in rejecting the estoppel argument.

In light of the foregoing, the judgment of the trial court will be affirmed.

*Affirmed.*