Present:  Carrico, C.J., Compton, Stephenson,[*] Hassell, Keenan, and Koontz, JJ., and Poff, Senior Justice

DAVID K. SLOAN, ET AL.

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.   Record No. 962264          September 12, 1997

MILTON F. JOHNSON, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Charles H. Duff, Judge Designate


In this appeal, we consider whether owners of certain lots in a subdivision may enforce express covenants that run with the land.

Arlington Investment Corporation conveyed approximately 25 acres of land to Jonathan R. Hagan in 1932.  From this grant, Hagan created a subdivision known as "Forest Park Addition to Waycroft" by plat of subdivision.

By deed dated July 11, 1934, Hagan and his wife conveyed part of Lot 13 and all of Lot 14 in the subdivision to J. Frederick Abel and his wife as joint tenants.  The deed contained this express language:

"This conveyance is made subject to the following conditions and restrictions which shall remain in force until July 1, 1943, and shall then be automatically renewed for a period of ten years and shall be automatically renewed every ten years thereafter:

. . . .

4.  Not more than one residence shall be erected upon this lot, the cost of which shall be not less than $4,000.00."

Alberta C. Abel, "the unremarried widow of J. Frederick

_____

[*]Justice Stephenson participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1997.

Abel," conveyed this property to Alberta C. Abel and Selina A. Taylor, trustees of the Alberta C. Abel Trust. This conveyance was made subject to "the restrictions and conditions contained in the deed forming the chain of title to [the] property."

Hagan conveyed Lot 11 in the subdivision to Joseph L. Gaddy in 1936. That deed contained the same restriction included in the Hagans' deed to Abel. Gaddy and his wife conveyed their property to James T. and Eva J. Newman by deed which stated that the conveyance was made subject to the restrictions and limitations of record. The Newmans conveyed their property to Jack H. and Thelma A. Foster who subsequently conveyed the property, by deed, to David K. and Robyn D. Sloan. These deeds contain provisions that each conveyance was made subject to the restrictions and conditions contained in the deeds forming the chain of title to the property.

Jonathan Hagan conveyed Lot 12 and part of Lot 13 in the subdivision to Cameron R. and Catherine V. Dye in 1934. This property is located between the property owned by the trustees of the Abel Trust and the Sloans' property. The deed also contained a restriction which stated that "[n]ot more than one residence shall be erected upon this lot, the cost of which shall be not less than $4,000.00."

Cameron Dye, who survived his wife, died testate, and Milton F. and Sharon A. Johnson inherited the property. The Johnsons filed a plan to subdivide their lot with the zoning

administrator of Arlington County.  The plan of subdivision, which was approved by the zoning administrator, permits the Johnsons to construct a second house on their lot.

David and Robyn Sloan, Alberta and Selina Abel Taylor, trustees, and others, filed their bill of complaint seeking to enforce the restrictive covenants against Milton F. Johnson, Sharon A. Johnson, and Potomac Custom Builders, Inc., and to prohibit them from constructing a second residence on the Johnson property.  Potomac Custom Builders, Inc., was dismissed from the proceeding, and at the conclusion of a bench trial, the chancellor held that the covenant was unenforceable "because a general scheme or plan of development applicable to Forest Park Addition to Waycroft does not exist which gives other lot owners reciprocal rights of enforcement of the restriction."  David and Robin Sloan and Alberta and Selina Abel Taylor, Trustees, sought and were awarded an appeal.  (Hereinafter, the Sloans and the Trustees will be referred to as the complainants and Milton F. and Sharon A. Johnson will be referred to as the defendants.)

The complainants contend that the chancellor erred by failing to enforce the express covenants which run with their land.  The defendants assert that the complainants are not entitled to enforce the covenants because the complainants' evidence failed to establish a general scheme or plan of development imposed on lots in the subdivision.

Covenants, express or implied, which restrict the free

use of land are not favored and must be strictly construed. Mid-State Equipment Co. v. Bell, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976). We will, however, enforce such covenants when applicable, but the person claiming the benefit of the restrictions must prove that the covenants are applicable to the acts of which he complains. Id., accord Friedberg v. Building Committee, 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977); Riordan v. Hale, 215 Va. 638, 641, 212 S.E.2d 65, 67 (1975); Stevenson v. Spivey, 132 Va. 115, 119-20, 110 S.E. 367, 368 (1922).

We have recognized two separate and distinct types of restrictive covenants: the common law doctrine of covenants running with the land and restrictive covenants in equity known as equitable easements and equitable servitudes. Mid-State Equipment Co., 217 Va. at 140, 225 S.E.2d at 884; Duvall v. Ford Leasing, 220 Va. 36, 43, 255 S.E.2d 470, 473-74 (1979); Renn v. Whitehurst, 181 Va. 360, 366-67, 25 S.E.2d 276, 279 (1943); Springer v. Gaddy, 172 Va. 533, 541, S.E.2d 355, 358 (1939).

We have, on numerous occasions, thoroughly discussed the doctrine of restrictive covenants in equity. For example, in Mid-State Equipment Company, we stated: "[t]he doctrine of restrictive covenants in equity, distinct from the common law doctrine of covenants running with the land, establishes rights and obligations known as equitable easements and equitable servitudes." 217 Va. at 140, 225 S.E.2d at 884; accord Minner v. City of Lynchburg, 204 Va.

180, 187, 129 S.E.2d 673, 678 (1963); Cheatham v. Taylor, 148 Va. 26, 37, 138 S.E. 545, 548 (1927).  The doctrine is that

> "when, on a transfer of land, there is a covenant or even an informal contract or understanding that certain restrictions in the use of the land conveyed shall be observed, the restrictions will be enforced by equity, at the suit of the party or parties intended to be benefited thereby, against any subsequent owner of the land except a purchaser for value without notice of the agreement.  The principal purposes of such agreements are to regulate the style and costs of buildings to be erected on a tract that is being sold in parcels for building lots, to restrict their location to certain distances from the street, and to prevent buildings in a locality from being put up or used for any other than residential purposes. . . .  The equity which is enforced prevents a third person, who has actual or constructive notice, from violating the equitable rights of another.
>
> . . . .
>
> And where a common grantor develops land for sale in lots and pursues a course of conduct which indicates an intention to execute a general scheme or plan of improvement for the benefit of himself and the purchasers of the various lots, and by numerous conveyances incorporates in the deeds substantially uniform restrictions, conditions and covenants against the use of the property, the grantees acquire by implication the equitable right, sometimes referred to as an implied reciprocal negative easement, to enforce similar restrictions against the residential lot or lots retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants."

Mid-State Equipment Co., 217 Va. at 140-41, 225 S.E.2d at 884 (citations omitted); accord Woodward v. Morgan, 252 Va. 135, 138, 475 S.E.2d 808, 810 (1996); Burns v. Winchester Hospital, 225 Va. 545, 548-49, 303 S.E.2d 908, 910 (1983).

The defendants argue that the trial court, relying upon Burns, was correct in deciding that the complainants "failed to prove the existence of a general scheme or plan of development which imposed a restriction on the number of houses."  However, in Burns, we considered whether residential owners could prevent a hospital from constructing a multi-level parking garage in their subdivision when the residential owners conceded that "no language in their deeds or those of the hospital [gave] them the explicit right to enforce restrictions contained in the hospital's deeds."  225 Va. at 548, 303 S.E.2d at 910.

Having conceded their inability to enforce the restrictive covenants under the common law doctrine of covenants running with the land, the residential owners in Burns went on to argue that there was an equitable servitude based upon a general scheme of development restricting the subdivision to residential use, which prohibited the hospital's multi-level parking garage.  The trial court held "there was no general scheme of development in the subdivision," id. at 549, 303 S.E.2d at 911, and we affirmed that holding.

Here, however, the complainants have not conceded their inability to enforce the restriction in dispute under the common law doctrine of covenants running with the land.  We must first determine, therefore, whether the complainants are entitled to enforce the restriction under that doctrine.  If so, it would be unnecessary in deciding this case to

consider whether an equitable servitude exists.

At common law, a landowner may enforce a covenant running with the land provided he establishes: (1) privity between original parties; (2) privity between original parties and their successors; (3) an intent that the restriction will run with the land; and (4) that the covenant "touches and concerns" the land. Additionally, the conveyance must be in writing. 7 Thompson on Real Property § 62.03 (David A. Thomas ed., 1994); 9 Richard R. Powell and Patrick J. Rohan, Powell on Real Property, § 60.04[.1] (1997).

Here, the evidence shows there was privity between the original parties, viz., Hagan and the respective grantees in the deeds he executed to convey the three lots involved in this controversy, namely, the Abels, Joseph L. Gaddy, and the Dyes. There was also privity between the three original grantees and their successors in interest. The three lots were all made subject to the restriction in dispute, and the words used in the deeds between Hagan and the predecessors in interest of the complainants and the defendants evinced an intent that the limitation on the number of houses which could be constructed on each lot would run with the land; those words provided for the automatic renewal of the restriction, essentially in perpetuity, negating any idea that the restriction was personal to Hagan. The covenant "touches and concerns" the land because it limits the number of houses that may be constructed upon each lot. Finally,

the covenant is in writing.  Hence, the complainants are entitled to enforce the restriction under the common law doctrine of covenants running with the land.

Accordingly, we will reverse the judgment of the trial court and enter a declaration here that the restrictive covenants are enforceable and that the defendants may not construct a second house on their property.  This results in final judgment in favor of the complainants.

Reversed and final judgment.