## CIRCUIT COURT OF LOUDOUN COUNTY

Lynn Oliver et al.

v.

Loudoun County
Board of Supervisors,
Branch Banking & Trust Co.,
and Glynn Tara Estates, L.L.C.

December 2, 2011

Case No. (Civil) 63889

By Judge Burke F. McCahill

Plaintiffs commenced this action to establish an equitable servitude and for injunctive relief on September 29, 2010. The Court heard testimony and argument in this matter on November 10 and 11, 2011. At the conclusion of the plaintiffs' case-in-chief, the County moved to strike the plaintiffs' case, which the Court denied. The Defendant then introduced evidence. The County did not renew its motion to strike at the conclusion of the trial. The Court took this matter under advisement and now finds as follows.

The property at issue is located in the Little River Farms subdivision (Little River Farms) of Aldie, Virginia. Little River Farms was originally one parcel of land. In 2005, Little River Farm, L.L.C. (the Developer) purchased this parcel for the purpose of developing an upscale residential community. In August 2005, the Developer received funding from Branch Banking & Trust Co. (BB&T) to develop the parcel into twenty-one single family lots. In April 2006, the Developer submitted a Land Development

Application to the County to develop Section 1 of Little River Farms, comprised of lots 1-4, 18, and 19 (Section 1). The application reflects that the proposed project was for six single family detached lots. In August 2006, the Developer submitted a Land Development Application to the County to develop Section 2 of Little River Farms, comprised of lots 5-17, 20, and 21 (Section 2), which reflects that the proposed project was for fifteen single family detached lots. The County approved both applications and acknowledged in the cover sheet to the approval for Section 1 that "[t]he purpose of this construction plan and profile is to develop six single family detached homes." See Plaintiffs' Exhibit # 12.

On December 19, 2006, the Developer recorded a Deed of Subdivision, Dedication, and Easement for Section 1, along with a plat depicting the lots in Section 1. On May 1, 2007, the Developer recorded a Deed of Subdivision, Dedication, and Easement for Section 2, along with a plat depicting the lots in Section 2. Note 6 on the plats for Sections 1 and 2 indicates that the proposed use for the property is "single family detached residential." The plats also show that septic tanks and wells were to be installed on each lot as part of the development of the property. The Developer obtained sewage disposal permits and well/water permits from the County for the lots.

The Developer had previously obtained, in December 2005, a zoning permit from the County to display an advertisement sign on the property. In addition to displaying a sign, the Developer maintained a sales office and website. Little River Farms was advertised exclusively as a single family detached residential community. In April 2007, the Developer sold its first lot, Lot 2, to Plaintiffs John and Norma Cusack. The Developer sold Lot 4 to Plaintiffs Lynn and J. Colette Oliver also in April 2007. In August 2007, the Developer sold Lot 5 to Plaintiffs Robert and Catherine Spicer. Plaintiffs Jonathan and Victoria Redgrave own Lot 1 of Little River Farms.

Prior to purchasing their homes in Little River Farms, the plaintiffs were shown a Declaration of Covenants, Conditions, Restrictions, and Reservation of Easements (the Covenants). The Covenants provide, in relevant part, that "[e]ach Lot shall be used, improved, and devoted exclusively for residential purposes only" and that "[n]o structure shall be erected, placed, or permitted to remain on any Lot other than one detached single-family residence." Although the Developer intended to record the Covenants, the Covenants were not actually recorded on the land records of the County.

On July 15, 2008, Dawn Klassen, the Land Acquisition Manager for the County, contacted the Developer about a possible sale of two lots in the subdivision to the County for use as the new Aldie Fire & Rescue Station. During this time, the Developer was experiencing financial hardships, and, on July 31, 2008, the Developer received a Notice of Default from counsel for BB&T. On October 10, 2008, the Developer and the County entered into a Real Estate Sales Contract, whereby the County purchased Lots

18 and 19. The same day that the Developer and the County signed the Deed, November 19, 2008, the Developer also signed an Owner's Affidavit at settlement stating that the current use for Lots 18 and 19 is "single family residence." The Developer subsequently entered into a Foreclosure Agreement with BB&T in December 2008. On May 12, 2009, the County recorded a boundary line adjustment, consolidating Lots 18 and 19 into Lot 18-A. The recorded boundary line adjustment was not introduced into evidence; however, it appears that both parties agree that the County consolidated the two lots.

Prior to the purchase of Lots 18 and 19, the County did not notify the residents of Little River Farms that it was seeking to acquire the property for a fire and rescue station and did not place any signs on the property indicating its intended use. Upon learning of the planned use for the property, the plaintiffs became concerned and upset. Plaintiffs thereafter filed the instant lawsuit asking the Court to declare that the Developer intended a general scheme of development to restrict the subdivision for residential use only and to be subject to the Covenants; that all lots in the subdivision are restricted to single family use and subject to the Covenants; that the County be enjoined from using Lot 18A for non-residential single family purposes consistent with the Covenants; and that the Covenants be recorded on the land records of the County against each of the lots in the subdivision.

A party seeking to enforce a restrictive covenant bears the burden of establishing the validity and meaning of the covenant and must show that the alleged violations are within the terms of the restrictive covenants. *Perel v. Brannan*, 267 Va. 691, 700, 594 S.E.2d 899 (2004) (citations omitted); see also *Mid-State Equip. Co. v. Bell*, 217 Va. 133, 140, 225 S.E.2d 877 (1976) (citations omitted). Covenants restricting the free use of land are not favored and are to be interpreted most strictly against the party seeking to enforce them. *Id.* Any ambiguity is to be decided against restrictions. *Scott v. Walker*, 274 Va. 209, 213, 645 S.E.2d 278 (2007) (quoting *Schwarzschild v. Welborne*, 186 Va. 1052, 1058, 45 S.E.2d 152 (1947)).

Virginia recognizes two types of restrictive covenants: "the common law doctrine of covenants running with the land and restrictive covenants in equity known as equitable easements and equitable servitudes." *Sloan v. Johnson*, 254 Va. 271, 274-75, 491 S.E.2d 725 (1997) (citations omitted). The doctrine of restrictive covenants in equity provides that:

> [W]hen, on a transfer of land, there is a covenant or even an informal contract or understanding that certain restrictions in the use of the land conveyed shall be observed, the restrictions will be enforced by equity, at the suit of the party or parties intended to be benefited thereby, against any subsequent

owner of the land except a purchaser for value without notice
of the agreement.

*Cheatham v. Taylor*, 148 Va. 26, 37-38, 138 S.E. 545 (1927) (quotation omitted). "The equity enforced is the prevention of a third person from violating the equitable rights of another of which he has notice, actual or constructive." *Id.* at 39.

In this case, to establish an equitable servitude, the plaintiffs must show that the Developer intended a common scheme of development for Little River Farms that restricted the use of the lots to single family residential, that this restriction was intended for the benefit of the residents in Little River Farms, and that the County had actual or constructive notice that the lots in Little River Farms were restricted to single family residential use. See *Mid-State Equip. Co., Inc.*, 217 Va. at 141. The Court believes that some of the evidence is relevant to both the element of intent and the element of notice; however, the Court will address these elements separately.

To determine whether the Developer intended to restrict the use of the property, the Court must look to "the words used in the restriction, the plats, the deeds, such surrounding circumstances as the parties are presumed to have considered when their minds met, the purpose to be achieved by the covenant, and the use of the property." *Id.* In *Mid-State*, the original owners used the land at issue for residential purposes and divided the land to create a residential subdivision. The lots each contained a restriction in the deed limiting use of the property to residential, except for the property at issue. When the property at issue was sold for commercial use, homeowners in the subdivision filed a lawsuit seeking an injunction to prevent Mid-State from operating a commercial establishment on the property. In considering whether the developer intended a common scheme, the Court considered favorably that the property at issue previously had the developer's home on it and that the developer instructed the surveyor to use the property for two residential lots. It also appeared that the property was inadvertently not numbered. The residential restriction on the plat, which depicted the property as an unreserved delineated lot, referred to all lots in the subdivision, not just numbered lots. The Virginia Supreme Court found that the homeowners had established an equitable right by showing that the parties intended that the property be restricted to residential use. *Id.* at 142-43.

In *Minner v. City of Lynchburg*, the City of Lynchburg purchased a lot in a subdivision to build a street. *Minner*, 204 Va. 180, 185, 129 S.E.2d 673 (1963). The original property was subdivided into thirty-one lots, and, except for "negligible exceptions" in three deeds, each lot contained uniform covenants and restrictions, including a restriction on placing a street for public use on the property. Although the lot sold to the City was subject to this restriction, the developer excepted a 50 foot wide strip of the

lot from this restriction. The homeowners filed a lawsuit to enjoin the City from using the land for a public street. The homeowners argued that the plats, covenants, and restrictions in the deeds, newspaper advertisements, and oral representations of the sales agents showed that the developer intended to adopt a general scheme of development for the mutual benefit of the developer and the residents of the subdivision. The Court found that the language in the restriction, in addition to the fact the restrictions were inserted in the deeds, showed that the developer intended to create a common scheme of development. The Court noted that, although the developer owned the lot sold to the City, changes in the restrictions could not be made on the lots unless all of the owners in the subdivision joined in a deed to change or release them. *Id.* at 184-86, 189-90.

In *Burns v. Winchester Memorial Hospital*, the Virginia Supreme Court affirmed the finding of the trial court that there was no scheme of development in the subdivision at issue. *Burns*, 225 Va. 545, 550, 303 S.E.2d 908 (1983). The evidence before the trial court showed that the plat for the subdivision was not recorded until after the first eight lots were conveyed, nine of the 28 lots in the subdivision contained no residential restriction, only two deeds contained language indicating an intent by the developer to have the residential restriction benefit all owners in the subdivision, and the language of restriction in the other deeds varied. The Court found it significant that, unlike in *Mid-State*, there was no restriction present on the plat and that only two of the deeds had language showing an intent by the grantor to have the restrictions benefit all owners in the subdivision. *Id.* at 549-50.

Under *Mid-State, Minner*, and *Burns*, it is clear that a determination of whether the developer intended a common scheme of use is fact specific and that the Court must consider the facts unique to this case. At trial, Irfan Totonji, one of two members of the corporate developer, testified that he intended for Little River Farms to be restricted to residential use. To support this intent, Mr. Totonji referred to the following during his testimony: a geotechnical study he had performed in 2005 to determine the suitability of the property for residential development; the loan agreement with BB&T for the development of the property into twenty-one single family lots; the land development applications submitted to the County for the residential development of Sections 1 and 2; the recorded deeds of subdivision and plats showing a proposed use of single family detached residential; the sewage disposal plans for Lots 18 and 19; the well water permit for Lot 19; the materials used to advertise the property; the Covenants restricting the use of the property to single family residential; the sales agreement to Plaintiff Cusaks referencing the Covenants; the zoning permit allowing for a sign showing a residence; and the Owner's Affidavit stating the current use of Lots 18 and 19 as "single family residence." Mr. Totonji testified that, although the Covenants were not recorded, he intended for them to

be recorded. Mr. Totonji also testified that the parent company of Little River Farm, L.L.C., Elite Investment and Management Group, Inc. (Elite), of which Mr. Totonji was president, experienced financial difficulties in 2008. Because Elite defaulted on a loan with BB&T for another project, BB&T exercised its option to find Elite in default on all of their loans, including the loan for the Little River Farms project. Although Mr. Totonji had personally guaranteed that loan, he worked out a deal with BB&T to release his personal guaranty. As part of that deal, the Developer was required to sell Lots 18 and 19 of Little River Farms to the County. Mr. Totonji testified, however, that he did not want to sell the Lots to the County.

Plaintiffs Lynn Oliver, Norma Cusak, and Catherine Spicer also each testified that, based on the representations made by the Developer, they believed the common scheme of development was restricted to single family residential. They each testified that they were shown a copy of the Covenants and the site plan for the community showing twenty-one lots with a house and driveway depicted on each lot. The contracts of sale for each of their homes contain a provision stating that their property is subject to the Covenants, and the deeds for each house reference the recorded plats. They each testified that they were specifically seeking a quiet community and that all representations made to them indicated that the community would be solely residential. They further testified that they would be harmed by increased traffic, noise, and light pollution and environmental issues if a fire and rescue station was built on Lots 18 and 19. Their testimony and the testimony of Mr. Totonji was corroborated by the testimony of Christine Richardson, the Director of Sales and Marketing for Elite. Ms. Richardson discussed how the marketing brochure used for Little River Farms showed it as a twenty-one lot community. Ms. Richardson also testified that she gave the Covenants to the purchasers when they signed their contract of sale and that it was her expectation that the Covenants would be recorded by closing.

The County argued at trial that the Developer's "proposed use" for the property is different from an intention to restrict the use of the property. The County specifically argued that the note on the recorded plats merely states the "proposed use" as residential, whereas a different note refers to "restrictions of record," and that this does not show an intention to restrict the use of the property. The Court finds this distinction immaterial in light of the evidence presented. Although the County is correct that the actual word "restriction" does not appear in the recorded documents, the Developer testified that the Covenants, which do expressly restrict the use of the property to residential, were intended to be recorded and that it was the Developer's intent to restrict the use to residential. Corroborating evidence, such as the sewage and water permits submitted to the County, the site plan, and the testimony of the homeowners, supports the conclusion that the Developer intended to restrict the use to residential. Therefore,

although the facts in other cases may have included recorded restrictions, the Court does not find this fatal under the facts of this case. An equitable servitude may be established based upon "a covenant or even an informal contract or understanding that certain restrictions" apply. *Cheatham*, 148 Va. at 37-38 (quotation omitted). Here, there can be no doubt that there was an understanding that Little River Farms would be restricted to residential use.

The Court finds significant that the right to equitable relief attaches once the Developer conveys property to the first homeowner with the implied promise that the entire community will be subject to the restriction. In *Cheatham*, the Virginia Supreme Court stated that:

> When the common grantor made the earlier conveyances there was an implied promise on its part, especially in view of the resolution of its board of directors and advertisement, that the entire property covered by the resolution should be subject to the restriction, and, for a violation of this promise, it could have been enjoined by a purchaser of one of the lots. An equity attached to the lots sold which the common grantor could neither violate nor alienate to a purchaser with notice.

*Id.* at 45. It is therefore immaterial that the Developer in this case later sold the property to the County, as the evidence shows that, at the time the Developer initially conveyed the property, it intended for the entire community to be restricted to residential use.

The Court finds insignificant the County's argument that the Developer's ability to amend the Covenants demonstrates the Developer's lack of intent to restrict the use of Little River Farms to residential. The Covenants allow the Developer to unilaterally amend the Covenants by a written instrument recorded among the land records so long as they own at least one lot. The Court believes that the Developer's ability to amend the Covenants may be a factor to consider in determining the Developer's intent, but it is not dispositive. As stated above, the relevant inquiry is whether there was an implied promise, at the time the first lot in the subdivision was conveyed, that the entire community would be restricted to residential use. Here, not only is there no evidence that the Developer sought to amend the Covenants to remove the use restriction, the Developer testified that it was his intent to restrict the use of the property to residential.

Accordingly, the Court finds that the plaintiffs have met their burden of showing that the Developer intended a common scheme of development to restrict Little River Farms to residential use and that this restriction was intended for the benefit of the residents of Little River Farms.

Plaintiffs must now show that the County had actual or constructive notice that Little River Farms was intended to be restricted to residential use. The Virginia Supreme Court has noted that:

> It is a general rule that whatever puts a person on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. A person who has sufficient information to lead him to a fact is deemed conversant with it, and a person who has notice of facts which would cause a reasonably prudent person to inquire as to further facts is chargeable with notice of the further facts discoverable by proper inquiry.

*Chavis v. Gibbs*, 198 Va. 379, 385, 94 S.E.2d 195 (1956) (quotation omitted). The Court in *Chavis* also stated that:

> [A purchaser] is bound, not only by actual, but also by constructive notice, which is the same in its effect as actual notice. *He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him.* He has no right to shut his eyes or his ears to the inlet of information, and then say he is a *bona fide* purchaser without notice.

*Id.* at 383 (quotation omitted).

In *Mid-State*, the Virginia Supreme Court found that, even disregarding what was recorded, "a view of the property from the ground would have revealed the uniform residential development surrounding the subject parcel and would have been sufficient to put a purchaser on inquiry as to whether there was a general plan to which the restriction applied." *Mid-State*, 217 Va. at 143 (citation omitted). The Court noted that the failure of Mid-State's attorney and the realtor to conclude that the property was subject to the residential restriction did not demonstrate lack of notice. *Id.* In *Minner*, the Virginia Supreme Court found that the City of Lynchburg had both actual and constructive notice of the restriction prohibiting the construction of a street on the lots, finding that the city attorney had advised the city manager and director of public works that all deeds to the lots conveyed had the restriction. *Minner*, 204 Va. at 190.

In this case, Mike Seigfried, the Assistant Director of Lands Subdivision for the County, testified that he approved the Land Development Applications for Sections 1 and 2 of Little River Farms, which show that the proposed project is for single family detached lots. Mr. Seigfried also

testified that the purpose of the "proposed use" note on the recorded plats, which is required by the Loudoun County Facilities Standards Manuel, is for the person approving the plat to verify that the proposed use is permitted by the zoning ordinance. Mr. Seigfried noted that the reason the County had to subsequently submit a site plan for Lots 18 & 19 after the County purchased its lots was because its proposed use was different from that which was originally intended, i.e., single family detached lots.

Maria Taylor, the Fire-Rescue Planner for the County, testified that she was a member of the acquisition team responsible for acquiring Lots 18 and 19 of Little River Farms for the County. Ms. Taylor testified that she visited Little River Farms and that it was clear to her that the neighborhood was residential. Lewis Rauch, the Director of the County's Department of Construction and Waste Management, also was a member of the acquisition team and testified that, as part of the County's due diligence process, he reviewed the sewage disposal permits for the lots. Mr. Rauch acknowledged that the schematic drawing for the Lot 19 permit showed a house and a septic field. Mr. Rauch also testified that he knew that Little River Farms was a residential subdivision.

Dawn Klassen testified that she contacted the Developer about the possibility of selling two lots to the County for use as a fire and rescue station. Ms. Klassen testified that she had visited Little River Farms in 2008 and that she knew it was a residential subdivision. Ms. Klassen also testified that she, along with others, performed the due diligence review. As part of this review, they looked at the Developer's file and took surveys on the property. Ms. Klassen testified that the Covenants were part of the Developer's file. Ms. Klassen did not discuss the specific provisions of the Covenants that she saw, but she testified that the copy of the Covenants that she saw was not signed. The copy admitted into evidence, however, was signed by Mr. Totonji on July 12, 2007, well before the County performed its due diligence review. This copy was properly authenticated by Mr. Totonji, and it contains the use restriction. Ms. Klassen also acknowledged that the tax status for the property was listed as suburban single family on the County's Real Estate Assessment.

Robert Gordon, President of Loudoun Commercial Title, L.L.C., performed the title commitment for the County for Lots 18 and 19 and assisted the County with the closing. Mr. Gordon also qualified as an expert witness for this case. Mr. Gordon testified that he did not find any recorded covenants restricting the use of Little River Farms to residential, that he did not find anything on the record that indicated an intent to restrict a use allowed by zoning, and that nothing put him on notice of a restriction. Mr. Gordon specifically testified that note 6 of the plats is not a binding restriction and does not override zoning. Mr. Gordon further testified that he prepared the Owner's Affidavit signed by Mr. Totonji and that it was an oversight that the property was listed as currently being used as a single

family residence. Mr. Gordon acknowledged that the Commitment for Title Insurance excludes "[e]asements, or claims of easements, not shown by the public records"; however, Mr. Gordon would not acknowledge that an equitable servitude was the sort of thing included by this exclusion. It is noteworthy that the plaintiffs' expert, Mina Croson, reached a different conclusion from that of Mr. Gordon. Ms. Croson testified that it was her expert opinion that there was an obvious scheme of development of single family detached residential and that the plats provided actual notice of this scheme to the County. Ms. Croson did not find significant that there was no recorded restriction, as many subdivisions do not have such restrictions recorded.

The County focuses its analysis on what was recorded and the fact that there was no language of restriction as to the use of Little River Farms on the record. The proper analysis, however, is not whether there were words of restriction on the record, but whether there was anything, on the record or otherwise, that would put the County on inquiry that Little River Farms was intended to be restricted to residential use and that would lead to this knowledge. Although the case law cited involved situations where there were recorded restrictions as to other properties in the subdivisions, each case must be viewed in light of the facts unique to it, and the Court does not believe the absence of the word "restriction" on the record is determinative of whether the County is charged with notice.

There is no doubt that the County was in a unique position with respect to Little River Farms. Unlike a typical purchaser, the County not only was involved in the process that allowed the Developer to create Little River Farms and a scheme of residential development, but also went through a due diligence review before purchasing Lots 18 and 19. As part of this review, the County had access to the Developer's file, which included the unrecorded Covenants. The Covenants, although not appearing on the record, should have put the County on inquiry that Little River Farms was intended to be restricted to residential use. Other documents reviewed by the County, either as part of the due diligence process or upon initial approval, also should have put the County on inquiry that Little River Farms was restricted to residential use. For example, the applications for subdivision, the applications for sewage and well/water permits, and the sewage disposal plans show that Little River Farms was intended for residential use. The recorded plats, although not using the word "restriction," also clearly show that Little River Farms is a residential subdivision. Moreover, two County employees, Maria Taylor and Dawn Klassen, testified that they viewed Little River Farms and that it was clear it was a residential community.

The County's expert, Robert Gordon, relied heavily on the fact that the title search did not reveal a restriction; however, the title search itself is not a safe haven. If there was a restriction on the record, then there would be no need for an equitable servitude. The Court finds significant that the

Commitment for Title Insurance issued to the County for Lots 18 and 19 specifically excludes "[e]asements, or claims of easements, not shown by the public records." This exclusion illustrates that the title search would not reveal an equitable servitude because equitable servitudes are easements created by courts and are not shown by public records. The Court also finds significant that the County had to change the site plan after obtaining Lots 18 and 19. The fact that the County had to "undo" the residential use designation on the site plan should have put the County on inquiry that the property was restricted, at least in a certain sense, and part of a common scheme.

The County also argued that building a fire and rescue station on Lots 18 and 19 is not restricted because it is a use allowed by the zoning ordinance. Whether a use is permissible under the zoning ordinance, however, is not dispositive of whether the use is restricted by an equitable servitude. Just as the County cannot claim a safe haven in the title search, nor can it claim a safe haven in the zoning ordinance. The inquiry remains whether the County had notice that Little River Farms was intended to be restricted to residential use. Based on the evidence presented, the Court believes that the County was on notice of the intended restriction.

Accordingly, the Court finds that the County had notice, both actual and constructive, that Little River Farms was restricted to residential use. The documents reviewed by the County, both in approving the development of Little River Farms and in conducting the due diligence review prior to purchasing Lots 18 and 19, served to put the County on actual notice that Little River Farms was restricted to residential use. Moreover, the recorded plats, when considered in light of the other evidence available to the County, should have put the County on constructive notice that Little River Farms was restricted to residential use.

The Court further believes that equity will be served by granting the plaintiffs an equitable·servitude. Although the homeowners themselves had constructive notice that the Covenants had not in fact been recorded, the evidence is overwhelming that the County should have known of the intent for Little River Farms to be restricted to residential use. The Court understands the importance of the County's ability to acquire property for fire and rescue stations. Nonetheless, the evidence is clear that the Developer intended that Little River Farms be restricted to residential use for the benefit of the purchasers, the plaintiffs purchased property in Little River Farms under this belief, and the County was put on ample notice of this restriction.

Accordingly, the Court finds that the plaintiffs have met their burden of establishing an equitable servitude, and the County is enjoined from using the property for non-single family residential purposes.