COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Lorish and White
Argued at Salem, Virginia

NANCY G. COOK, ET AL.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0758-23-3               JUDGE KIMBERLEY SLAYTON WHITE
                                                          APRIL 23, 2024
LEON H. GREENE, JR.


                    FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                                  W. Chapman Goodwin, Judge

            Christopher M. Okay for appellants.

            Jeffrey A. Ward (Franklin, Denney, Ward & Strosnider, PLC, on
            brief), for appellee.


        Leon Greene, in a suit against his two siblings, sought a partition in kind of 106 acres of real

property, inherited by the three siblings from their mother when she died. Kenneth and their sister,

Nancy Cook, filed a counterclaim requesting an allotment. The trial court awarded the partition in

kind instead of an allotment of the property. For the following reasons, we affirm the court below

on all issues and remand for proceedings consistent with the trial court ruling.

                                          BACKGROUND

        This action began when appellee, Leon Greene Jr. (Leon), commenced a petition for

partition of real estate on May 6, 2019, against the appellants. The appellants are Leon's sister,

Nancy G. Cook (Cook), and his brother, Kenneth A. Greene (Kenneth). The petition called for a

"petition in kind" of a parcel of land measuring 106.299 acres that the three siblings inherited

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

from their mother in 2013. In response, the appellants filed a petition to allot the entire parcel to Kenneth and have him buy out each of his two siblings' 1/3 interest in the parcel.

It is undisputed that the three parties each have an undivided one-third interest by inheritance in the parcel. The parcel consists of approximately 106.299[1] acres with approximately 75 acres of open ground, 27 acres of upland wooded area, and road frontage. At the time, Kenneth used the parcel for beef cattle farming. Leon previously farmed the land with their father, but more recently only Kenneth and their mother farmed the land. After the death of their mother in 2013 and by mutual agreement among the three siblings, Kenneth farmed the land alone from 2009 to the present. The operation included raising beef cattle and growing feed crops.

After their mother died, the siblings initially contributed equally to a farm maintenance account, which covered the land expenses including electric bills, insurance, and property taxes. Kenneth paid consistent rent to his siblings in return for the ability to farm the land by himself. This rent consisted of $1000 yearly to each Cook and Leon in order to lease the land for his cattle enterprise. In 2019, while Cook continued to cash the checks, Leon stopped cashing his. Leon also stopped paying his third of his contribution to the farm expenses.

The land contained timber as well as a house, a barn, and other outbuildings. A 400 square foot sinkhole was located 10 feet from one corner of the property. Kenneth and Leon testified that the area around the sinkhole could not be farmed. There was also a septic system which was not currently being used, and the condition of which was unknown.

Both parties hired appraisers who provided testimony at trial. Leon hired Chris Cason; Kenneth and his sister hired Wesley Woods. Cason testified that he had been in the appraisal

---

[1] This is the proper size of the land. The opinion of the trial court had it listed as 106,299 acres.

business for thirty-one years. He testified that "5 to 10 percent" of his appraisals involved "farms or land as opposed to just single[-]family residences," and that ninety-five percent of his appraisals involved land in Augusta County. He specifically testified that he was "qualified to give expert testimony or give an appraisal based on the market approach to the sale of farm property." Finally, he testified that he had "passed the state board" and was "a state-certified residential appraiser" and that there is "not an additional certification" required to appraise land used as a farm.

Several years prior to the suit, Leon made a sale of walnut timber from the land that netted all parties $14,000. The proceeds went to the farm account. Although Leon and Kenneth agreed that there was still value in the property's timber, neither party's appraiser assigned any additional value to the timber. The appraisers both testified that the barn and outbuildings did not add to the value of the parcel and would likely have to be torn down at the owner's expense. Woods testified that the well and septic did not affect the value of the property due to their age.

Both appraisers testified that the value of the property was appraised based on a per acre average price without adjustment for farmland versus timberland, as the values were roughly equal. Both appraisers provided a value to the property that was very close. Woods, in an appraisal from April 2020, valued the property at $655,000, or roughly $6,200 per acre. However, at trial Woods did state that the appraisal was out of date, and due to rising property values the land was likely worth much more than the 2020 price. Cason testified that, as of December 2022, the value was roughly $6,700 per acre, totaling $735,000.

Leon's surveyor, Tom Shumate, testified that he could divide the parcel from the front public road through the farmland and wooded land and create three parcels of equal acreage.

On January 10, 2023, the trial court granted Leon's complaint to partition the 106.299 acres of real property that the siblings had inherited from their mother by dividing the property into equal tracts of land measuring 35.40 acres. The court also denied the counterclaim to allot the entire property to Kenneth.

The trial court found that the property's average per acre value was $6,800 and that the property could be partitioned "into three equal parcels" that contained "equal road frontage, farmland, and woodland." The court ordered that Kenneth would receive the portion that contained the well and, therefore, would pay his siblings $5,000 each to offset that value. The court ordered the surveyor to prepare a final plat marking the boundary lines "for recording and deed purposes" and ordered that "minor variations in the acreage between the three parcels" would be accounted for by "cash payment[s] between the parties at the average per acre value of $6,800."

## ANALYSIS

We review a trial court's decision to partition real estate for an abuse of discretion. *De Benveniste v. Aaron Christensen Family, LP*, 278 Va. 317, 326 (2009) (citing *Butler v. Hayes*, 254 Va. 38, 44 (1997)). Factual findings are binding unless plainly wrong or without evidentiary support. *Orgain v. Butler*, 255 Va. 129, 132-33 (1998). In addition, the issue of statutory interpretation presents a pure question of law reviewed de novo. *Thorsen v. Richmond Soc. For the Prevention of Cruelty to Animals*, 292 Va. 257, 264 (2016) (citing *Conyers v. Martial Arts World of Richmond*, 273 Va. 96, 104 (2007)).

I.  Denial of Plea for Allotment and Granting of Partition in Kind[2]

Under the version of Code § 8.01-81 applicable to actions filed prior to July 1, 2020,

> Tenants in common . . . shall be compellable to make partition and
> may compel partition . . . .  Any court having general equity
> jurisdiction shall have jurisdiction in cases of partition; and in the
> exercise of such jurisdiction, may take cognizance of all questions
> of law affecting the legal title that may arise in any proceedings,
> between such tenants in common . . . .

Code § 8.01-81 (1984).

Under § 8.01-83, if it is shown that partition in kind is not convenient, the Code provides

that, a party seeking allotment may be awarded the entire parcel if he is able to purchase it from

his co-owners:

> *When partition cannot be conveniently made*, the entire subject
> may be allotted to any one or more of the parties who will accept
> it, and pay therefor to the other parties such sums of money as their
> interest therein may entitle them to . . . .

Code § 8.01-83 (1977) (emphasis added).

Under the applicable statute, the *only* burden of a party seeking partition was to show

status as a co-owner under one of the categories enumerated in the statute, and that division in

kind was possible.  "The fundamental rule" in partition cases is that "[i]f the property be

divisible in kind, any co-owner has the right to insist that partition be so made.  The majority of

the co-owners in such case may not insist on a sale against the will of any of their fellows."

---

[2] Many of Cook and Kenneth's arguments on appeal allege that the trial court erred by
misconstruing and failing to apply 2020 amendments to the partition statutes.  However, an
enactment clause to the amendments provides that they do not apply to partition actions filed
before July 1, 2020.  *See* 2020 Va. Acts. ch. 193, clause 3.  Consequently, those amendments are
not applicable to this case.  While, at argument, appellants recognized that the enactment clause
made the amended *statutes* inapplicable, they took the position that the *content* of the new
statutes codified what the case law had been.

*Sensabaugh v. Sensabaugh*, 232 Va. 250, 257 (1986) (quoting *Bridge v. Snead*, 151 Va. 383, 390 (1928)).

Appellants do not argue that Leon was not a co-owner. Instead, appellants insist that *Leon* was required to "show that partition of the Parcel in kind was 'convenient, practicable and in the best interest of the Parties.'" Appellants misrepresent the burdens of the parties. The proponent of partition has never had the burden to make any such showing. The defendant (proponent of partition) did not have the burden of proving that partition could be conveniently made, but rather the plaintiff (proponent of sale) had the burden of proving that it could *not* be conveniently made. *Sensabaugh*, 232 Va. at 256-58. "The burden was upon the complainants [the parties opposing partition in kind] to show that the land could *not* be conveniently divided in kind without a sacrifice of the interests of the owners." *Bridge*, 151 Va. at 395 (emphasis added). Appellee made the minimum showing under Code § 8.01-81. This left the burden to the appellants to prove that a partition could not be conveniently achieved by the court.

Appellants' only affirmative arguments that a division in kind was not convenient consist of pointing to certain differences in the three tracts awarded to each party. Specifically, appellants argue that "under County zoning and development rules, only Leon's subdivision of the parcel would be permitted within one calendar year, while the appellants would have to wait for subsequent years to have a transaction involving their subdivision recorded." They also argue that Leon's and Kenneth's tracts are "upland" while Cook's contains a "sinkhole and several acre drainage areas." Finally, they argue that appellee's tract is all "open tillable and/or pasture" while Kenneth's tract contains a "dilapidated farmhouse" and "barn with structural defects."

To address appellants' arguments that the differences in the three tracts make partition in kind not convenient, the trial court ordered that "[t]o the extent that the acreage based on the

- 6 -

topography should result in a minor variation in the acreage between the three parcels the court will make adjustments as necessary by a cash payment between the parties." In cases in which it is impossible to divide a property into parts such that each owner

> shall have in severalty a part equal to his interest in the whole subject . . . the law affords other means for doing exact justice to each and all: instead of dividing the property into shares of equal values, it may be divided into shares of unequal values; and when so divided the law . . . will correct the inequality by means of a charge of money on the more valuable in favor of the less valuable portion, or by other means recognized in the law of partition.

*Cox v. McMullin*, 55 Va. (14 Gratt.) 82, 91 (1857). The trial court ordered exactly this type of partition.

In ruling in favor of partition in kind, the trial court found that each witness, including the appellants, thought that the property could be divided into three parcels. The trial court relied on the appraisers and on the surveyor in concluding that "I can direct the surveyor to prepare a plat that runs lines . . . from the dividing line in front, back to the midpoint of the dividing line in the back . . . [a]nd if I follow the directions from the appraisers . . . there's no difference in value between the property." The court found that the properties as divided "should contain approximately equal road frontage, farmland, and woodland." The trial court recognized that County zoning laws may require that the partition process be accomplished in two steps, over two years, yet also found that such a process did not render the partition impracticable. The trial court's findings are not without evidence to support them.

"Because the trial court heard the evidence *ore tenus*, its decree is entitled to the same weight as that which attaches to a jury verdict. The court's findings are binding upon us unless they are plainly wrong or without evidence to support them." *White v. Pleasants*, 227 Va. 508, 512 (1984) (citing *Burns v. Winchester Memorial Hospital*, 225 Va. 545, 550 (1983)). We find that the trial court did not abuse its discretion when ordering partition in kind.

- 7 -

II. Qualifying Appellee's Residential Real Estate Appraiser as an Expert

We review a trial court's decision to qualify an expert witness for an abuse of discretion. *Christian v. Surgical Specialists of Richmond, Ltd.*, 268 Va. 60, 65-66 (2004). *See also Jackson v. Qureshi*, 277 Va. 114, 121 (2009). "Whether to qualify a witness as an expert rests largely within a trial court's discretion." *Spencer v. Commonwealth*, 238 Va. 563, 573 (1989). A trial court's decision that a witness is qualified as an expert "will not be disturbed on appeal unless the record clearly shows that the witness was not qualified." *Id.* at 573-74.

In this case, the trial court was presented with testimony from an appraiser with over thirty years of experience whose work was nearly completely dealing with property in the resident county. While the appraiser dealt mostly with residential properties, he did have experience in determining the market value of properties that were used as farms. The appraiser had successfully passed the state examination and was certified to perform appraisals.

A witness determined by a court to be an expert must be "qualified as an expert by knowledge, skill, experience, training, or education" on the subject. Va. R. Evid. 2:702(a)(i)-(ii). An expert must have a degree of knowledge "beyond that of persons of common intelligence and ordinary experience." *Wakeman v. Commonwealth*, 69 Va. App. 528, 536 (2018).

Appellants argue that Leon's appraiser was not qualified to give testimony concerning the value of a beef cattle farm. But appellants miss the point. The appraiser was asked to assign value to a piece of land upon which there was some farming being done, not the value of the farming operation itself. In fact, appellants' own appraiser did exactly the same thing that was done by Leon's appraiser and came up a similar market value for the land.

The trial court was well within discretion to qualify Leon's appraiser as an expert witness. As the record does not show that the witness was unqualified, we will not disturb the trial court's decision.

III.  Failure to Order an Appraisal Per Code § 8.01-81.1

The appellants argue that the trial court erred as a matter of law when it failed to order an additional appraisal in this matter.  Appellants argue that the parties each presented conflicting testimony as to valuation of the subject parcel and that neither expert provided a valuation of the detrimental value of the dilapidated "improvements" on proposed Tract 2 or regarding the unique topography and sinkhole on proposed Tract 3.

However, we find that neither party requested that the trial court order an additional appraisal.  Nor did the appellants object when the trial court did not order an additional appraisal at trial or raise any objection on this point following the final order.[3]  "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."  Rule 5A:18.  This rule's purpose "is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary."  *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004) (en banc) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 131 (1989)).  The rule "applies to all cases, both law and equity . . . ."  *Lee v. Lee*, 12 Va. App. 512, 514 (1991) (en banc).  We find that this assignment of error was not preserved for appeal.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court and remand for proceedings consistent with the lower court's ruling.

*Affirmed and remanded.*

---

[3] While appellants' counsel penciled in "objected to" above his endorsement on the final order, he provided no specificity and no reference to this issue.

- 9 -